574 P.2d 102 (1977)
Carl PRUTCH and Sam Prutch, co-partners d/b/a Diamond Trading Co., Plaintiffs-Appellees,
v.
FORD MOTOR COMPANY, a corporation, Defendant-Appellant, and
W. E. Baldridge and Don Baldridge, Individually and as partners d/b/a Baldridge Implement Co. and Baldridge Implement Co., Defendants.
No. 76-520.
Colorado Court of Appeals, Div. III.
October 6, 1977.
As Modified On Denial of Rehearing November 10, 1977.
Certiorari Granted January 30, 1978.
*102 Charles J. Haase, Colorado Springs, for plaintiffs-appellees.
Shafroth & Toll, P. C., Herbert A. Delap, Denver, for defendant-appellant.
PIERCE, Judge.
Plaintiffs, Carl and Sam Prutch, brought this action against defendants Ford Motor Company and Baldridge Implement Company for breach of express and implied warranties *104 in connection with the sale of certain farm equipment. Defendant Ford Motor Company appeals a judgment based on a jury verdict against it, and we reverse.
In early 1969, Carl and Sam Prutch expanded their vegetable farming operation by acquiring an additional 500 acres of nearby farm land, known as the "river ranch." Because they felt the additional acreage would require more heavy-duty farm equipment, the Prutches contacted a salesman for the defendant Baldridge Implement Company. On February 14, 1969, the Prutches purchased a tractor, plow, and disc harrow from Baldridge, all manufactured by Ford. In June of 1969, they bought a Ford baler from Baldridge.
Alleging that defects in these four pieces of equipment resulted in poor ground preparation of the river ranch, the Prutches sued Ford and Baldridge in October of 1971, claiming damages which included a loss of part of the 1969 river ranch crop. After the first trial ended in a mistrial, the jury in a second trial rendered a verdict in favor of the Prutches and against Ford for $60,200. It also rendered a verdict in favor of Baldridge.

I.
The principal issue which Ford raises on appeal relates to the question of damages. Ford insists that its liability, if any, extends only to the difference between the value of the equipment as warranted and the value of the equipment as delivered, and does not include consequential damages for crop loss. Ford further argues that even if the damages to the river ranch crop are theoretically recoverable, the evidence presented at trial was too remote and speculative to justify such an award.
Taking the remoteness question first, we disagree with Ford's contention that the evidence as to crop loss was too speculative. It is true that in order to justify an award of damages for lost crops, the trier of fact needs specific evidence showing the connection between the seller's breach and the crop damage. Fort Lyon Canal Co. v. Bennett, 61 Colo. 111, 156 P. 604 (1916). See Lee v. Durango Music, 144 Colo. 270, 355 P.2d 1083 (1960). However, despite Ford's argument to the contrary, the record here is replete with evidence, particularly from Sam Prutch and the Prutches' expert witness Dr. Smith, connecting the breach with the damage to the river ranch crop. This testimony was detailed and extensive, and was neither remote nor speculative.

II.
We also reject Ford's contention that the Prutches cannot, as a matter of law, recover for the crop damage. The basic measure of damages for breach of warranty under the Uniform Commercial Code is the difference between the value of the goods accepted and the value of the goods as warranted. Section 4-2-714(2), C.R.S.1973. It is this measure which Ford argues is controlling. But under "special circumstances," consequential damages may also be recovered. Section 4-2-714(2) and (3), C.R.S.1973.
The Code rejects the common law's narrow "tacit agreement" test, under which a seller was liable for consequential damages only if he expressly or impliedly agreed to be liable. See § 4-2-715, C.R.S.1973 (Official Comment 2). Instead, the element which triggers recovery of consequential damages under § 4-2-715(2)(a) is foreseeability. We construe § 4-2-715(2)(a) to mean that consequential damages are recoverable whenever those damages were reasonably foreseeable by the seller when he entered the contract. See Lewis v. Mobil Oil Corp., 438 F.2d 500 (8th Cir. 1971); Keystone Diesel Engine Co. v. Irwin, 411 Pa. 222, 191 A.2d 376 (1963); J. White & R. Summers, The Uniform Commercial Code § 10.4 at 325 (1972).
Ford argues that since the Prutches planted crops after they knew of the alleged defects in the equipment, any resulting crop damage was not foreseeable by Ford. We disagree.
The general rule is that the action of a buyer in using a product after he knows it *105 is defective is an intervening act which cuts off the seller's liability for consequential damages. See, e. g., Erdman v. Johnson Brothers Radio & TV Co., 260 Md. 190, 271 A.2d 744 (1970); General Instrument Corp. v. Pennsylvania Pressed Metals, Inc., 13 UCC Rptr.Serv. 829 (D.Md.1973); Michigan Sugar Co. v. Jebavy Sorenson Orchard Co., 66 Mich.App. 642, 239 N.W.2d 693 (1976). However, this general rule is inapplicable to the facts here.
When the Prutches learned of the alleged defects in their equipment, shortly after each piece was purchased in the spring of 1969, they could have stopped using the equipment and sued for damages under § 4-2-714(2). Ford urges this alternative rather than the continued use of the equipment. Had the Prutches ceased using the equipment, there is evidence in the record indicating that operations at the river ranch would have been delayed too long and that the 1969 crop would not have been planted in time. There is also evidence that the Prutches attempted to obtain substitute equipment, but were unable to do so. Thus, the Prutches were in a position of having to choose between reduced or damaged crops and no crop at all.
Under these circumstances, we hold that the planting did not cut off Ford's liability for damage to the crops, since the act of planting the crops was itself foreseeable. See Holm v. Hansen, 248 N.W.2d 503 (Iowa 1976); Burrus v. Itek Corp., 46 Ill.App.3d 350, 4 Ill.Dec. 793, 360 N.E.2d 1168 (1977). Accordingly, since the trial court gave proper instructions on the issue of foreseeability and proximate cause, we hold it did not err in refusing to limit damages to the impaired value of the equipment.

III.
Ford also argues that there was no evidence showing that the equipment was defective when last in its control. We agree as to the plow, but disagree as to the tractor, disc, and baler.
Before a buyer may recover for breach of an express or an implied warranty, he must show that the goods left the warrantor's control in a defective state. Herbstman v. Eastman Kodak Co., 68 N.J. 1, 342 A.2d 181 (1975); see J. White & R. Summers, The Uniform Commercial Code, § 9.6 at 286 (1972).
With respect to the tractor, Ford argues that the evidence shows that the defect arose after manufacture. It is true that there was testimony that the tractor performed normally at various demonstrations before the Prutches' purchase. But there was also testimony that the defect in the tractor originated in the hydraulic system, specifically in a casing which was sealed when it left the manufacturer. Though Ford argues that the defect could have arisen by turning a shaft on the outside of the casing, there was sufficient evidence to support the conclusion that the tractor left Ford in a defective condition.
There was also some evidence from which a jury could conclude that the disc was defective when it left Ford's possession. Dr. Smith testified that he believed the disc was defectively designed since it lacked sufficient structural support to insure level operation. Such a design defect would, by definition, have existed when the disc left the Ford factory.
Similarly, Dr. Smith testified that the baler was not properly matched with the tractor, and that this mismatch caused the failure of the baler to operate.
However, there was no evidence that the plow was defective when it left the Ford factory. Dr. Smith himself testified that the uneven plowing was attributable solely to the defect in the tractor's hydraulic lift system.
Since we have no way of telling which pieces of equipment formed the basis of the jury's verdict, we must remand for a new trial on both the liability and damage issues. See Mosher v. Schumm, 114 Colo. 441, 166 P.2d 559 (1946). The trial court is directed to limit this new trial to those claims based on the tractor and the design defects, if any, of the disc and tractor/baler combination.

*106 IV.
Ford also argues that the trial court erred in failing to instruct the jury that the Prutches were required to give Ford notice of the breach under § 4-2-607(3)(a), C.R.S. 1973. We agree. Though there was sufficient evidence in the record to support the conclusion that such notice was given, we address this issue for the benefit of the trial court in its retrial of this case.
While there is a split of authority as to whether notice of a breach of warranty must be given to a remote manufacturer where there is property damage, we adopt what has been considered the majority rule that such notice is required, at least in those situations not involving personal injury. See, e. g., Redfield v. Mead, Johnson & Co., 266 Or. 273, 512 P.2d 776 (1973); Phillips, Notice of Breach in Sales and Strict Tort Liability Law: Should There be a Difference?, 47 Ind.L.Rev. 457 (1972). This rule is sanctioned by § 4-2-607, C.R.S.1973 (Official Comment 5).
Our conclusion is further strengthened by the fact that our legislature has expanded the class of persons protected by express and implied warranties beyond that set forth in the original Uniform Code. Our statute covers "any person who may reasonably be expected to use, consume, or be affected by the goods, and who is injured by [a] breach of the warranty." Section 4-2-318, C.R.S.1973. If an immediate buyer and a foreseeable consumer are not distinguished for the purpose of imposing liability, we see no reason why they should be distinguished for the purpose of the notice requirement.
On retrial, the court should instruct the jury that the Prutches must show that they gave Ford timely notice of the defects.

V.
To further assist the trial court in the retrial of this case, we must address some of the evidentiary objections which Ford raises.
Its first objection is that the trial court erred in admitting certain documentary evidence, since that evidence was not properly authenticated. We agree.
The documents in question were introduced as Plaintiff's Exhibits II, HH, Z-1 and Z-2. These exhibits were sales receipts and were introduced for the purpose of showing the diminished value of the produce from the river ranch in 1969. None of the documents were signed by the Prutches, and the authors were never produced or identified. Since no foundation was ever laid authenticating these documents, their introduction into evidence was error. Blair v. Blair, 144 Colo. 442, 357 P.2d 84 (1960). Cf. Westland Distributing, Inc. v. Rio Grande Motorway, Inc., Colo.App., 555 P.2d 990 (1976). On retrial, unless such a foundation is laid, the trial court should exclude these exhibits. See Sevit, Inc. v. Western Stock Center, Inc., Colo.App., 559 P.2d 1118 (1976).
Ford next contends that Plaintiff's Exhibits FF and GG, which were carbon copies of contracts for the sale of tomatoes and melons to be grown on the river ranch in 1969, were improperly admitted into evidence since they violate the best evidence rule. We do not agree. The trial court properly ruled that these carbon copies were "original" documents within the meaning of C.R.C.P. 43(g), and that the prerequisites of that rule need not be met. Foderaro v. Ghione, 111 Colo. 422, 142 P.2d 274 (1943). See also 2 Jones on Evidence § 7:31 at 146 (S. Gard 6th ed. 1972).
Ford also argues that certain U.S. D.A. market reports, introduced as Plaintiff's Exhibits MMM, NNN and OOO, were improperly admitted because they are irrelevant. Though Ford failed to timely object to some of these exhibits, we will address this issue as to all three exhibits, since this question may well arise again upon retrial.
The prices contained in the market reports represent the prices wholesalers receive at the Denver market, and not the prices they pay to the farmers. We therefore agree with Ford that the wholesale prices quoted in these exhibits have little to do with the farm prices which are at issue *107 here. Unless the Prutches can show some relationship between the on-farm and at-market prices, these exhibits should not be admitted.
Ford also objects to the rulings made on the admission of certain photographic evidence introduced on both sides. The Prutches insist that certain photographs, offered as Plaintiff's Exhibits QQQ and RRR, are relevant as to the standard of care exercised by Ford employees. However, this case was tried on a breach of warranty and not on a negligence theory. These photographs are therefore immaterial and should not be admitted into evidence at retrial.
Ford also objects to nine photographs of the tractor's draft control system taken by Dr. Smith in 1975, and admitted as Plaintiff's Exhibits FFF, TTT, DDD, WWW, UUU, VVV, XXX, YYY and ZZZ. Ford's objection to these exhibits is that there was no foundation to show that these 1975 pictures related to the tractor's 1969 defect. We disagree. The photographs were introduced as part of Dr. Smith's testimony about the tractor's defective hydraulic system. As discussed above, there was evidence that the defect in the hydraulic system was centered in a case sealed at the Ford factory. The situation here, therefore, is distinguishable from Baird v. Power Rental Equipment, Inc., Colo., 552 P.2d 494 (1976), where there was no evidence connecting the accident with the expert's subsequent examination.
Ford attempted to introduce its own photographs, Defendants Exhibits 9-36, showing wear patterns on other pieces of Ford equipment. The Prutches objected to these exhibits on the grounds of relevancy and surprise, and the trial court excluded them. Since we are remanding for a new trial, the surprise issue is moot. As to relevancy, the Prutches argue that the photographs are inadmissible because they depict tractors which are completely different than the Ford model at issue. But the photographs were not introduced for the purpose of showing the similarity between the tractors; rather, they were offered to compare the wear patterns on the hydraulic systems, which systems were identical. On retrial, the court should admit these comparative photographs.

VI.
We have reviewed the balance of Ford's allegations of error, and find them to be without merit or do not anticipate that they will arise upon retrial.
The judgment of the trial court is reversed and the cause remanded for a new trial consistent with this opinion.
RULAND and VanCISE, JJ., concur.