**Carl PRUTCH and Sam Prutch, Co–Partners, d/b/a Diamond Trading Co., Petitioners,**

v.

**FORD MOTOR COMPANY, a corporation, Respondent.**

**No. C–1440.**

Supreme Court of Colorado, En Banc.

Oct. 20, 1980.

Charles J. Haase, Colorado Springs, for petitioners.

Shafroth & Toll, P.C., Frank H. Shafroth, Herbert A. Delap, Denver, for respondent.

PER CURIAM.

Petitioners Carl and Sam Prutch (Prutches) were plaintiffs below. They sued for alleged breaches of express and implied warranties arising out of their purchases of a tractor, plow, disc harrow, and hay baler. The defendants in the lawsuit were the Ford Motor Company (Ford), manufacturer of all four farm implements, and its dealer, Baldridge Implement Company (Baldridge), which had sold the equipment to Prutches.

The first trial ended in a mistrial. At the conclusion of the second trial, the jury rendered a verdict for $60,200 in favor of the plaintiffs against Ford. The jury, however, held Baldridge not liable.

Ford appealed. The court of appeals overturned the jury verdict and remanded the case for a third trial. *Prutch v. Ford Motor Co.*, 40 Colo.App. 129, 574 P.2d 102 (1977). The court of appeals ruled that the plaintiffs had the burden of proving (1) the particular items of equipment which caused the specific damages, (2) that each item found defective was defective when it left the manufacturer's control, and (3) that the plaintiffs gave the manufacturer timely, di-

rect notice of the claimed breach of warranty. We granted certiorari and now reverse the court of appeals' decision and reinstate the jury verdict.[1]

The facts are summarized in the opinion of the court of appeals.

## I. Unnecessary to Detail Which Implement Caused Which Damages.

■ The plaintiffs' claim for damages was based upon the contention that the failure of the Ford implements to comply with warranties adversely affected the crops which were produced or harvested by use of those implements in the year of the sale.

All of the allegedly defective farm implements were manufactured by Ford. The jury was not instructed to specify which piece of equipment accounted for any particular item or amount of the lump sum damages awarded. Although the trial judge concluded that there was no evidence to support a finding that the plow was defective, he refused to direct a verdict or explicitly instruct the jury to that effect.

Ford contends that, since the jury's verdict does not reveal which specific items of the plaintiffs' damages were caused by each defective implement, it is possible that the jury improperly attributed some of the damages to the plow which was not found defective. A review of the jury instructions, however, reveals that the plow was not included as a possible subject of breach of warranty by Ford or a possible cause of damages recoverable from Ford. Rather, the jury was instructed to consider only the tractor, disc, and baler in determining Ford's breach of warranty, and damages.[2] Therefore, the jury could not have founded its verdict upon any defect in the plow. To do so it would have had to disregard the jury instructions, and there is nothing in the record to justify an inference that it did so.

While it is correct that all of the implements were not used to produce all of the crops, the court's instructions required the jury to predicate each component of damages on a breach of warranty as to the tractor, the disc, or the baler. The jury was directed that it was necessary that any damages awarded must have been proximately caused by a breach of warranty by Ford with respect to at least one of those farm implements. We presume that the jury understood and followed those instructions. See People v. Corbett, Colo., 611 P.2d 965 (1980); People v. Sepeda, 196 Colo. 13, 581 P.2d 723 (1978).

No useful purpose would have been served by requiring the jury to apportion the damages to the particular piece of equipment or combination of pieces of equipment which caused them. There was adequate evidence that all the damages were caused by defects in the tractor, the disc, or the baler, all of which were Ford implements. Moreover, Ford did not request that the jury be required to apportion the damages. We conclude that the instructions were adequate to assure that the damages awarded by the jury were proximately caused by breaches of warranty by Ford.

## II. Allocating the Burden of Proof.

■ The court of appeals imposed upon the plaintiffs the burden of proving that the farm equipment was defective when it left the warrantor's (Ford's) control, i. e.,

1. An opinion in this case was written by Justice Carrigan for the Colorado Supreme Court and was issued on September 24, 1979. That opinion was withdrawn after motion for rehearing was granted. The former opinion can be found in The Colorado Lawyer for November 1979, Vol. 8, No. 11 at 2320.

2. The plow was mentioned in the general description of the plaintiffs' claims, instruction 1, and in the elements of the breach of implied warranty of merchantability claim against Baldridge, instruction 10. The elements of the breach of warranty claims against Ford are set forth in instructions 8 and 9, which make no mention of the plow. Ford made no objection to any of the instructions, except the parts of instructions 8 and 9 dealing with notice to Ford. That subject is treated in part II of this opinion. Ford tendered an instruction identical to instruction 10, containing reference to the plow.

before it came into the custody of Baldridge or any intermediate shipper.

In our view, this burden of proof—when applied to a transaction between a typical consumer and a franchised dealer for a remote manufacturer—reflects unrealistic expectations. Unlike conditions in less complex times, today's typical consumer has no means of discovering whether the product of a remote manufacturer was defective when it left the factory, or at what point in the multi–step manufacturing–delivery process the defect was introduced. At best. the ordinary buyer is able to become aware only after delivery to the buyer that the product is defective. *See generally Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 289 (Alaska 1976); *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848, 853 (1968).

To impose an impossible or unreasonably onerous burden of proof is to deny many consumers a meaningful remedy. Thus, a plaintiff's burden should be no more than to establish that the defect arose in the course of manufacturer–distribution and before the plaintiff purchased the item.[3] A plaintiff who claims breach of warranty, therefore, should be able to satisfy the burden of proof by evidence that at the time of purchase or acquisition the product was flawed in a manner constituting a breach of warranty, and damages resulted. *See 2 Frumer and Friedman, Products Liability*, § 16A(4)(e)(iii) at 117.

Manufacturers, distributors, and sellers in the chain usually have greater access to information identifying a defect's source than does the buyer. Moreover, they are in a position to protect themselves against losses from conduct of another in the chain, as by "hold harmless" and indemnity agreements or other contractual arrangements.[4]

Injustice would result from denying a claim for relief for breach of warranty when one of several defendants clearly was responsible for the defect giving rise to the breach, but the plaintiff cannot prove which one. Procedural rules governing burden of proof and burden of going forward with the evidence are intended to facilitate the truth–seeking process of trial, and thus to facilitate justice. Requiring each defendant in the chain of distribution to show that the product was not defective when it left its control imposes no unreasonable burden on defendants. Such a procedure simply redistributes the burden to those who have superior knowledge of the truth and better access to evidence.

■ We conclude that the plaintiffs' burden is limited to showing that a defect existed at the time the farm implement in question first came into the plaintiffs' possession. The evidence was more than adequate to satisfy that burden.

III. *The Notice Requirement.*

■ Although the plaintiffs had promptly given Baldridge effective notice of the claimed breaches, and Baldridge in turn had

---

**3.** The court of appeals of Washington adopted this position in *Curtiss v. YMCA*, 7 Wash.App. 98, 498 P.2d 330 (1972), and in the supplemental opinion and order denying petition for rehearing, 7 Wash.App. 451, 499 P.2d 915 (1972). However, in affirming this decision, in *Curtiss v. YMCA*, 82 Wash.2d 455, 511 P.2d 991 (1973), the Washington supreme court majority ruled that a plaintiff has the burden of proof that the product was in a defective condition at the time it left the hands of the warranting seller. The majority found this burden to have been carried as a matter of law.

**4.** An analogous problem and solution have arisen in the area of negligence. If there are multiple defendants and the evidence supports a reasonable inference that the negligence of one

(but not all) of the defendants caused the injury, the plaintiff would be in a hopeless position if required to show which defendant was negligent. The California supreme court provided an escape from that quandary by applying *res ipsa loquitur* to permit the plaintiff to proceed past a nonsuit. Despite the plaintiff's lack of affirmative evidence pointing to any particular defendant, the plaintiff, through *res ipsa loquitur*, may establish a *prima facie* case. Each defendant, in turn, is then required to come forth with evidence that he or she was not in fact negligent. *Ybarra v. Spangard*, 25 Cal.2d 486, 154 P.2d 687, 689 (1944). *Accord, Becker v. American Airlines*, 200 F.Supp. 839 (S.D.N.Y.1961); *Nichols v. Nold*, 174 Kan. 613, 258 P.2d 317 (1953).

immediately notified Ford, the court of appeals' opinion could be construed as holding that such indirect actual notice is insufficient and as requiring *direct* notice from ultimate consumer to remote manufacturer. We disagree. Our review of the purpose of the notice requirement, and of the evidence of actual notice in this case, leads us to conclude that the court of appeals erred in stating too stringent a notice requirement.

The UCC requires that in circumstances such as here presented "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach, notify *the seller* of breach or be barred from any remedy ...." Section 4–2–607(3)(a), C.R.S.1973 (emphasis added).

The plaintiffs, upon encountering problems with the newly–purchased equipment, immediately notified Baldridge, the seller. Baldridge, in turn, promptly advised Ford of the problem, and Ford dispatched a service representative who arrived to work on the equipment within a few days after it had been delivered. Surely formal notice communicated directly from the buyers to Ford could have accomplished no more. *See generally* White and Summers, *Uniform Commercial Code*, § 11–9 at 347 (1972).

In the law governing breach of warranty, the notice requirement[5] serves three useful purposes. First, notice provides the seller a chance to correct any defect. *Rich's Restaurant, Inc. v. McFann Enterprises, Inc.*, 39 Colo.App. 545, 546, 570 P.2d 1305, 1306 (1977). Second, notice affords the seller an opportunity to prepare for negotiation and litigation. Third, notice provides the seller a safeguard against stale claims being asserted after it is too late for the manufacturer or seller to investigate them. White and Summers, *Uniform Commercial Code*, § 11–9 at 344 (1972).

Here Ford received from its dealer prompt, actual notice of the machinery's malfunction and almost immediately had an opportunity to repair the equipment. In these circumstances it is clear that the purposes of notice have been fulfilled. Indeed, it is highly unlikely that those purposes could have been more thoroughly or satisfactorily met by delivery of formal notice directly from the plaintiffs to the manufacturer.[6]

The court of appeals noted a split of authority whether notice of a breach of warranty must be given to a remote manufacturer in all cases. *Prutch v. Ford Motor Co., supra*, 40 Colo.App. at 134, 574 P.2d at 106. Because such notice was given here, and because the answer may not be the same in all factual contexts, we do not pursue that question further. *See generally Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 699, 377 P.2d 897, 899 (1962); *Tomczuk v. Town of Cheshire*, 26 Conn.Sup. 219, 217 A.2d 71, 73 (1965); Prosser, *Torts*, § 97 at 655 (4th ed. 1971); White and Summers, *Uniform Commercial Code*, § 11–9 at 343 (1972); James, *Products Liability*, 34 Tex.L.Rev. 192, 196 (1955); Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L.J. 1099, 1130 (1960). When, as here, the purposes of the notice requirement have been fully served by actual notice, the notice provision should not operate as a technical procedural barrier to deny claimants the opportunity to litigate the case on the merits.

## IV. *Consequential Damages.*

Ford contends that it cannot be charged with the crop damages incurred by the Prutches. Colorado law authorizes consequential damages for "[a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which

---

5. Section 4–2–607(3)(a), C.R.S.1973.

6. UCC § 2–607, comment 4, makes clear that, where notice is given, no formal requisites must be met. It is sufficient if the notice lets "the seller know that the transaction is still troublesome and must be watched." A leading text states that "a scribbled note on a bit of toilet paper will do ...." White and Summers, *Uniform Commercial Code*, § 11–9 at 347 (1972).

could not reasonably be prevented by cover or otherwise." Section 4–2–715(2)(a), C.R. S.1973. The court of appeals noted that the Colorado statutory scheme rejects the "tacit agreement" test that would permit consequential damages only if the seller specifically contemplated or actually assumed the risk of such damages. *Id.*, official comment 2. Rather, as the court of appeals observed, recovery of consequential damages is determined by the test of "foreseeability" of consequences.

■ Ford would have us construe "foreseeability" to generate liability only if a manufacturer had some prior actual knowledge as a basis for anticipating damage. But the defendant, in trying to add the ingredient of "prior knowledge" to the "foreseeability" concept, confuses "foreseeable" with "actually foreseen." A standard that would require actual "prior knowledge" by the defendant would impose liability only upon proof that the defendant actually foresaw consequential damages. Such a test would be excessively restrictive. The statutory "reason to know" standard, in our view, triggers liability for consequences that may not have been actually foreseen but which were foreseeable.

■ A manufacturer knowing that its products will be used for crop production reasonably can be expected to foresee that defects in those products may cause crop losses. *Lewis v. Mobil Oil Corp.*, 438 F.2d 500, 510 (8th Cir. 1971). In such circumstances, therefore, the manufacturer should not escape liability by arguing that it did not actually foresee probable consequences which it should have foreseen.

■ Ford also seeks to avoid liability for consequential damages by claiming that the plaintiffs' own actions increased their losses and thus became an intervening cause of damages. The defendant correctly states the rule that consequential damages created by a buyer's use of the product after discovery of the defect may not be recovered in a breach of warranty action. *R. I. Lampus Co. v. Neville Cement Products*, 16 U.C.C.Rptr. 996, 1010 (1975); *General Instrument Corp. v. Pennsylvania Pressed Metals*, 366 F.Supp. 139, 149 (M.D. Pa.1973); *Michigan Sugar Co. v. Jebavy Sorenson Orchard Co.*, 66 Mich.App. 642, 239 N.W.2d 693, 695 (1976). But unlike the facts in the cases the defendant has cited, Ford's failure to provide the Prutches properly functioning equipment left them a narrow range of alternatives. The plaintiffs' only choice was between reduced crops and no crops at all. Contrary to Ford's contention, the record does not support a conclusion that the plaintiffs could have mitigated their damages further by shifting the onion crop to lands prepared for planting by use of the Prutches' old John Deere equipment, and planting vegetables for which proper seedbed preparation is less critical on the lands prepared by use of the Ford implements.

The plaintiffs, in deciding to continue farming with the knowledge that their Ford equipment might continue to malfunction, actually mitigated their losses. This they were required by statute to do. Section 4–2–715(2)(a), C.R.S.1973. Their decision to try to produce at least part of a normal crop, rather than no crop at all, was required by their "duty to lessen, rather than increase," their damages. *Roberts v. Lehl*, 27 Colo.App. 351, 356, 149 P. 851 (1915).

## V. *Inconsistent Verdicts.*

■ Ford claims that, since the same theories of breach of warranty applied both to Ford and Baldridge, since evidence was admitted against both at trial, and since no crossclaims were filed between them, the jury's verdicts for Baldridge and against Ford were inconsistent. The defendant contends that such inconsistent verdicts reflect a failure by the jury to follow the instructions.

Ford's contentions, however, amount to little more than speculation. Among other possible reasons for the jury's verdicts are that Baldridge claimed to be following Ford's instructions, that Ford and Baldridge furnished separate (although similar) warranties, and that different instructions

were given by the trial court for establishing liability for the two defendants.

## VI. *Evidentiary Rulings.*

We have considered the various allegations of error in rulings on evidence. While the rulings in this long and hotly contested case may not have been perfect in all respects, we are satisfied that any evidence improperly received was either cumulative or otherwise nonprejudicial to Ford. Indeed, several of Ford's most vigorously asserted objections are directed to corroborative evidence of money received by the plaintiffs for crops raised and sold in mitigation of damages. Furthermore, we are satisfied that no material evidence offered by Ford was improperly excluded. We find Ford's other allegations of error to be without merit.

## VII. *Conclusion.*

The judgment of the court of appeals is reversed and the cause is remanded with directions that it be returned to the district court for reinstatement of the jury verdict.

DUBOFSKY, J., does not participate.