## CIRCUIT COURT OF HENRICO COUNTY

Kathryn Kerr, Executrix

    v.

Hunter Division
and Electrical Equipment Co.

                     Case No. 78-L-491

Kathryn Kerr

    v.

Hunter Division
and Electrical Equipment Co.

                     Case No. 78-L-492

                     February 23, 1981

BY JUDGE E. BALLARD BAKER

These cases arise out of a fire in the home of Kathryn Kerr on February 23, 1978, during which Maynie Fisher, the mother of Kathryn Kerr, died, and the home of Mrs. Kerr was badly damaged. The contention of the plaintiffs was that an electric baseboard heater, manufactured by Hunter Division and sold by Electrical Equipment Co., the defendants, was defective and that this caused the fire.

On May 23, 1980, jury verdicts against both defendants were returned. In 78-L-491, the jury assessed damages of $100,000.00 for the

death of Maynie Fisher of which $40,000.00 was distributed to Kathryn Kerr, $40,000.00 to a son of Mrs. Fisher, and $20,000.00 to a granddaughter. In 78-L-492, Kathryn Kerr was given a verdict of $50,000.00 for damages to her real and personal property. Motions to set the verdicts aside were timely made, memoranda filed, and argument heard on October 17, 1980.

Briefly, the motions raise the following issues:

1. Notice required under § 8.2–607(3)(a) of the Uniform Commercial Code.

2. Sufficiency of the evidence to permit a finding that the baseboard heater was unreasonably dangerous for its intended use.

3. Admissibility of evidence relating to allegedly dissimilar and unrelated heater problems.

4. Statements by the Court to the jury when the jury reported it was hung.

5. After-discovered evidence relating to the notice requirement.

6. Refusal of Court to grant instructions on assumption of the risk.

There are some undisputed facts, and recital of some of them gives a background for discussion of the issues.

In January, 1976, six electric baseboard heaters were purchased from Electrical Equipment Co. and installed in the home of Kathryn Kerr, the purchase and the installation being done by her cousin, Milton Hess.

From installation until February 23, 1978, the heaters worked satisfactorily. Whether one of them performed satisfactorily on February 23 is an issue.

On the morning of February 23, after Kathryn Kerr had gone to work, there was a fire in her home which resulted in the death of Maynie Fisher, the only person in the home at the time, and damage to the home and other property of Kathryn Kerr.

On December 5, 1978, these two law suits were commenced against these two defendants. Each suit contained two counts, one in negligence, one in warranty. The cases eventually came down to the issue of warranty alone.

Considerable evidence was received directed at the notice requirement, in addition to a great amount on the warranty issue.

On the notice issue, the parties stipulated that neither defendant was given notice of the alleged breach of warranty relating to the base-

board heater until the suit was filed, the notice being the Motion for Judgment.

## I. *The Notice*

Section 8.2–607(3)(a) provides that after goods have been accepted:

The buyer must within a reasonable time after he discovered or should have discovered any breach notify the seller of breach or be barred from any remedy . . . .

Both defendants in the Grounds of Defense in each case contended the plaintiff failed to comply with the notice provision. The contention was renewed when the plaintiffs rested (Tr. pp. 418, 427) and again when all the evidence was in. (Tr. pp. 689, 691.) The motions were overruled with objections noted. In 78-L-491, the death case, the Court took the position that Maynie Fisher, the deceased, was not the buyer and that the notice requirement was not applicable. No instruction relating to or requiring proof of notice was given in that case.

In the property damage case, 78-L-492, the jury was told that Kathryn Kerr had to prove a breach of warranty and that she gave notice in a reasonable time. Instruction 10, limited to 78-L-492, told the jury that she must prove, among other things, that she:

notified the defendants within a reasonable time after she discovered or should have discovered any breach . . . .

Instruction 11, in Case 78-L-492, told the jury that the requirement that Kathryn Kerr give notice:

is a requirement for the exercise of good faith by a buyer who has a claim based on a breach, and whether notice is given within a reasonable time is to be considered in the light of all the surrounding circumstances.

No quarrel is presented as to the wording of Instruction 11.

The U.C.C. provision involved here is not a statute of limitations, as is § 8.2–725.

The notice issue raises the following question.

(1) *Is either plaintiff required to give notice, and, if so, to whom?*

Section 8.2–607(3)(a) states "the buyer . . . must notify the seller . . ." Buyer and seller are both defined as persons who contract to buy or sell goods. Section 8.2–103(a), (d). While there is some suggestion by plaintiffs that Milton Hess was the buyer, he being the person

named in the invoices and sales order of January 20, 1976 (Plt. Ex. 1, 2), whatever Hess did he did for Kathryn Kerr, his cousin.

It would take a strained and technical view to hold that Kathryn Kerr was not the buyer. The purchase was for her, the heaters were installed in her home, and she paid for them. (Tr. pp. 70, 71, 74). No case is cited nor found by the Court even discussing the possibility that Kathryn Kerr is not the buyer under these circumstances.

Counsel for the plaintiffs, though suggesting that Hess is technically the buyer, does not rely on that point. While instructions 10 and 11 use the word "buyer" rather than name Kathryn Kerr, instruction No. 1 as applicable to the property damage case told the jury that the burden was on Kathryn Kerr to give notice. Case 78-L-492 was tried on the basis that Kathryn Kerr was the buyer.

The statutory notice provision applies to the claim of Kathryn Kerr. How about the death case in which she is the executrix and a statutory beneficiary along with a son and granddaughter of Maynie Fisher?

There is an absence of authority on the precise point.

Under § 8.2–318, a person whom the manufacturer or seller may reasonably expect to be affected by an article is not barred from bringing an action based on breach of warranty. Lack of privity is no defense. Maynie Fisher could bring an action based on breach of warranty.

The Official Comment to § 8.2–607 speaks of beneficiaries given rights for injuries under the U.C.C. for breach of warranty and says:

> the reason of this section does extend to requiring the beneficiary to notify the seller that an injury has occurred . . . even a beneficiary can be properly held to the use of good faith in notifying, once he has had time to become aware of the legal situation.

The Official Comment cannot be used to expand the scope of a code section where contrary to the section. *Leake v. Meredith*, 221 Va. 14 (1980).

In 2 Anderson, U.C.C. (2d ed.) at § 2–607.14, the following is stated:

> A person not in privity with the defendant, assuming that he is permitted to sue the defendant, is not barred for having failed to give notice to the defendant . . . . (p. 211.)

> When a non-purchaser is entitled to sue a seller for such third person's harm resulting from a condition or defect which in itself was a breach of warranty, the requirement of notice to the seller is not applicable . . . . (p. 212.)

A number of cases support this statement persuasively. *Clemco Industries v. Johnson*, 25 U.C.C. 1088 (Ala. 1979), *Mattos v. Hash*, 368 A.2d 993 (Md. 1977), *Frericks v. General Motors*, 363 A.2d 460 (Md. 1976), and *Tomczuk v. Cheskine*, 217 A.2d 71 (Conn. 1965), all hold a non-buyer need not give notice under the Uniform Commercial Code. *Dipangrazco v. Salamonsen*, 393 P.2d 936 (Wash. 1964), takes a similar position with respect to the notice provision of the Uniform Sales Act.

A contrary view can be found in 3 Williston, Sales, 4th ed. (Squillante & Fonseca) at 302–303, and also, as noted, in the Official Comment. That view is, however, not in accord with the rather plain language in § 8.2–607 when the action is based on breach of warranty.

The language of § 8.2–607 is clear. It says "buyer" must give the notice. Maynie Fisher is not the buyer. If the legislature intended the notice requirement to apply to persons affected by the use of the goods, the statute could have so provided.

I conclude that Maynie Fisher would not have to give notice under § 8.2–607 had she survived. The fact that Kathryn Kerr is the buyer and then becomes the executrix of Maynie Fisher does not, in my view, impose on the Fisher estate any additional requirements. The executrix represents the estate and has the same right of action, and no other, as the decedent. 8A M.J., *Executors*, § 289. No authority has been found, or cited, imposing greater burdens on an executor than those which would be carried by the decedent.

In my view, Maynie Fisher's estate is not required to comply with the notice provision.

Thus, Kathryn Kerr must give notice in the property damage case; Kathryn Kerr, executrix, does not have to give notice in the death case.

(2) *To whom must Kathryn Kerr give notice?*

Section 8.2–607(3)(a) requires notice to "the seller." "Seller" is defined in § 8.2–103 as "a person who sells or contracts to sell goods."

Electrical Equipment made this sale and is a seller. Hunter Division made no sale to Milton Hess or Kathryn Kerr, though it did sell to Electrical Equipment.

2 Anderson U.C.C. (2d ed.) at 2–607.13 says the notice provision applies only "as between a buyer and his immediate seller" but made a reference to the author's comment in 2–607.14. The latter section, discussing situations where the claimant is not in privity and after observing that only the buyer is required to give notice, makes the following observation:

> In some cases, it has been apparently assumed without question that the requirement of notice applies to bar the ultimate purchaser in a breach of warranty action against the remote vendor. Although there is no legal basis for such a distinction, it is likely that a warranty plaintiff will be required to give notice to the remote warranty defendant where (a) the plaintiff was a purchaser, and (b) the warranty is an express warranty. The rationale for this conclusion is that with respect to the plaintiff, he has knowledge of the source from which he purchased the goods and can readily ascertain either from a label or from the seller or both to whom notice should be given, as contrasted with the plaintiff who is not in the distributive chain, such as an innocent bystander, to take the most extreme situation. The fact that the warranty is express seems significant since a court may readily feel that a warrantor should recognize when he makes an express warranty that his warranty may form part of the basis of subsequent bargains, i.e., resale transactions. It therefore does not seem inconsistent with the basic concepts of fair play to make the warrantor back up his warranty regardless of the fact that the plaintiff is a remote buyer. It is quite possible that some courts will feel that there is a reciprocal "fair play" obligation to give the remote defendant such notice as the circumstances permit. (pp. 212–213.)

Cases cited on the point in the text and supplement are *Vintage Homes v. Coldiron*, 585 S.W.2d 886 (Tex. 1979); *Goldstein v. Searle*, 378 N.E.2d 1083 (Ill. 1978); *Prutch v. Ford Motor*, 574 P.2d 102 (Colo. 1977); and *Green Seed v. Williams*, 438 S.W.2d 717 (Ark. 1969).

*Prutch* and *Green Seed* do indeed say the buyer must give notice to the remote manufacturer. *Prutch*, which involved a buyer of farm equipment, states:

While there is a split of authority as to whether notice of a breach of warranty must be given a remote manufacturer where there is property damage, we adopt what has been considered the majority rule that such notice is required, at least in those situations not involving personal injury. 574 P.2d 106.

*Goldstein*, which involved a personal injury, took the position that a buyer of an oral contraceptive who sues the remote manufacturer need not give notice to the manufacturer but only to her immediate seller, but the manufacturer may raise the defense that no notice was given the immediate seller. The Court said the U.C.C. envisions that the buyer notice his seller who will pass the word upstream to the manufacturer.

Under the particular facts in each case, the opinions in *Prutch*, *Green Seed*, and *Goldstein* did not result in dismissal of the plaintiff's claim.

*Vintage Homes* was an action by a buyer of a mobile home against the manufacturer, without the immediate seller being sued. The Court held the U.C.C. required notice only to the seller, and also the manufacturer's repairman had worked on the unit and that would be notice.

For further discussion of the notice provision on this point, and in general, see 47 Indiana Law Journal 457–480.

The cases and the secondary authorities appear to confuse the issue. What appears to be involved is a matter of interpreting rather simple language.

The language is "the buyer . . . must notify the seller . . . ." "Buyer" and "Seller" are both defined. The problem may arise from the fact suggested in some places that as the U.C.C. allows a person affected by a breach of warranty and as to whom the manufacturer should have expected such affect, to sue the manufacturer despite the lack of privity, this person should have the duty to give notice under § 8.2–607. (Counsel will note that § 8.2–318 in Virginia is not the same as the U.C.C. provision giving rights to persons other than the buyer. The Virginia version appears to be broader.)

In my view, the language is clear and simple. As applied here, Kathryn Kerr is the buyer; Electrical Equipment is the seller.

Kathryn Kerr is required by § 8.2–607 to give notice to Electrical Equipment, but not to Hunter Division.

### (3) *What notice is required?*

Section 8.2–607(3)(a) requires the buyer to give notice "within a reasonable time after he discovers or should have discovered any breach . . . or be barred from any remedy . . . ."

The 4th Edition of Williston, Sales, is rough on the buyer on this provision in Volume 3, stating:

> The language of § 2–607(3)(a) is strong. It has made notice to the seller mandatory where there has been a breach of warranty, if the buyer hopes to recover for any losses arising out of that breach. Without the giving of notice, the buyer has no remedy. Consequently, notice is not permissive in nature, but is mandatory. Without it, there can be no lawsuit. Notice of the breach of warranty is an essential element of the buyer's cause of action and not merely an affirmative defense. Failure to give not only notice of breach but also timely notice of the breach of warranty will have the effect of precluding a cause of action based upon a breach of warranty. When the buyer does bring his cause of action, he must allege and prove in his complaint that his notice of breach of warranty is sufficient, for if he does not, he has no remedy for the seller's breach of warranty . . . . (Vol. 3, pp. 296–297.)

And later in the section, the authors discuss the bringing of suit and notice.

> To avoid making a determination of the necessity of giving notice in personal injury and property damage suits, some courts have found that the mere filing of the complaint was sufficient notice. Such a solution offends one's sense of fair play and the concept of notice. A summons and complaint is hardly within the spirit of either the Uniform Sales Act or the Uniform Commercial Code requirement of the giving of timely notice. The requirement of the giving of notice cannot be circumvented. The best rule would seem to be that the buyer who fails to give timely and reasonable notice to the seller of a breach of warranty, either under the contract of sale or in negligence, should lose his right to damages. (Vol. 3, pp. 301–302.) . . . .
>
> The giving of notice is absolutely necessary to establish the rights, duties, and obligations, which flow out of the alleged

breach of warranty of quality. Without such notice, there can be no commencement of action to settle the issues of liability. (p. 303.)

2 Anderson, Uniform Commercial Code, makes the following observation:

A buyer who has accepted the seller's tender of delivery must notify the seller of any breach. If such notice is not given, the buyer is barred from any remedy to which the breach would otherwise give rise.

The notice of a breach of warranty is in the nature of a condition precedent to the right of the warranty plaintiff to recover damages. (Vol. 2, § 2–607.12, p. 210.)

Anderson then goes on at length on page 212–213 to suggest that the warranty plaintiff will be required to give notice to the remote warranty defendant where there is an express warranty, this comment noted before in this opinion.

On the question of litigation as notice, Anderson says as follows:

The bringing of an action to recover damages for breach of warranty cannot be regarded as the notice of breach contemplated by U.C.C. § 2–607(3), for whether an action can be brought, that is, whether a remedy is available, is conditioned upon whether notice had been given of the breach. Consequently, where no notice is given prior to the bringing of the action, an essential condition precedent to the right to bring the action does not exist and by hypothesis the buyer-plaintiff has lost the right to his remedy.

Under the pre-Code law, there was authority that a buyer's conduct in promptly bringing an action against the seller for breach of contract was a sufficient notice. This view is in technical conflict with decisions holding that notice is a condition precedent to the right to sue, and it would appear that the obligation under the Code to act in good faith would require that the buyer not only give notice but to do so under such circumstances that the seller might have the opportunity, if he desired to avail himself of it, to remedy his breach without the buyer jumping into a lawsuit. (Vol. 2, § 2–607.28, p. 219.)

When the cases cited in the above statements are read, they reveal factual situations not at all similar to the present case. While they can be said to support the text, the widely varying facts do not encourage reliance on the text as necessarily stating the law.

It does appear reasonably correct to say that the Uniform Sales Act notice provision did require notice as a condition precedent to a lawsuit on breach of warranty, with exceptions in personal injury cases. (6 A.L.R. 3d 1372). The language in the Sales Act generally read that if the buyer failed to give notice, the seller shall not be liable. 6 A.L.R. 3d 1372; *Davidson v. Wee*, 379 P.2d 744 (Or. 1963). That is not the same as the buyer being barred from any remedy.

The UCC language in § 8.2–607(3) says that a buyer who fails to give notice to his seller is "barred from any remedy." Remedy is defined as "any remedial right to which an aggrieved party is entitled with or without result to a tribunal." (§ 8.1–201[34].)

It is this language, plus the background of the Uniform Sales Act cases, which gives strength to the text comments. The following cases do also: *Armco Steel v. Isaacson*, 28 U.C.C. 1249 (Alaska 1980); *Point Adams v. Marine Construction*, 594 F.2d 763 (9th Cir. 1979); *Rich's Restaurant v. McFann*, 570 P.2d 1305 (Colo. App. 1977); *Lynx v. Ordinance*, 327 A.2d 502 (Md. 1974); *Winter v. Honegger*, 215 N.W.2d 316 (Iowa 1974); *Leeper v. Banks*, 487 S.W.2d 58 (Ky. 1972); *Green Seed v. Williams*, 438 S.W.2d 717 (Ark. 1969).

In 17 A.L.R.3d, the text states:

> A buyer is barred from any remedy unless he notifies the seller of the breach of contract within a reasonable time . . . . (p. 1038.)

and at 1111 two cases, *Solomon & Son v. Thomas*, 45 Luzerne Leg. Req. R. 269 (Pa. 1955), and *Holowka v. York Farm Bureau*, 78 York Leg. Rec. 121 (Pa. 1963), are cited in support of the proposition that notice must be given prior to suit.

In 93 A.L.R. 3d, the text states:

> Likewise, the commencement of a suit for breach of warranty pertaining to defects in quality or operation was held insufficient to constitute notice as required by § 2–607(3)(a) of the Uniform Commercial Code. (p. 369.)

and at page 386 is a further reference to *Solomon & Son v. Thomas*.

The above cases involve merchant transactions and can be distinguished in one way or another, and there are cases to the contrary that are also distinguishable. *See Goldstein v. Searle*, 378 N.E.2d 1083 (Ill. 1978), and *Pace v. Sagebrush*, 560 P.2d 789 (Ark. 1977).

*Goldstein*, while holding that notice to the manufacturer, the sole defendant, was sufficient if held by a jury to be within a reasonable time, involved a personal injury to a retail consumer from a product as to which the manufacturer had received other complaints of similar problems.

The notice requirement is stated in the Official Comment to § 8.2–607(3)(a) to "only be such as informs the seller that the transaction is claimed to involve a breach and thus opens the way for normal settlement through negotiation." The comment at 93 A.L.R. 3d 368 is that the statutory notice:

> is designed to allow the defendant seller an opportunity for repairing the defective item, reducing damages, avoiding defective products in the future, negotiating settlements, and protecting against stale claims.

Negotiating settlements does not of course contemplate only pre-suit negotiations. Looking again at the language of the U.C.C. itself, § 8.2–607(3)(a) says "the buyer . . . must notify the seller of breach or be barred from any remedy." And, as noted, "remedy" is "any remedial right to which an aggrieved party is entitled with or without resort to a tribunal." § 8.1-201(34).

Language in the decisions seek to distinguish between merchant and non-merchant transactions, suggesting notice is a condition precedent only as between merchants. There are also suggestions of a different application of the notice requirement if a personal injury is involved rather than property damage or an action for the price of goods sold.

It is impossible to find those distinctions in the text of the Code. While it appears the U.C.C. does provide in various places for different rights and liabilities for merchants and non-merchants, 17 A.L.R. 3d 1030, there are no distinctions in § 8.2–607(3)(a), except in the Official Comment which differentiates between a merchant buyer and a retail customer as to what standard will be applied for judging "reasonable time" for notice. No comment is made which supports a different treatment as to the requirement of giving reasonable notice "or be barred from any remedy."

Upon consideration of the language of the notice section, this Court is led to the conclusion that notice is mandatory and that without giving notice, there can be no remedy. The giving of notice by filing suit is not supported by most of the few cases which have considered the issue, nor is it supported by the language of the notice section.

The purpose of the notice is to let the seller know there is a problem. Nothing fancy or detailed is required. The buyer need only give notice to his seller, not to the remote manufacturers. There is nothing difficult about giving the statutory notice.

If notice is given prior to suit, the seller has the opportunity to investigate more promptly, he may consider repairing the item or altering his product to prevent similar problems, he may be able to limit damages, and he may be able to effect settlement without litigation. Under the facts in this case, only the opportunity for earlier investigation and pre-suit negotiation have been lost; and to deny Kathryn Kerr her right to sue is a penalty. However, in many cases, notice prior to bringing suit would be in furtherance of all the purposes of the notice requirement.

The statutory language is not designed to permit the filing of suit to serve as notice in cases where there may be no particular benefit from pre-suit notice, but to deny suit to serve as notice in those cases where pre-suit notice serves a beneficial purpose. The language is broad. It covers all actions based on breach of warranty and says without reasonable notice, the buyer is barred from any remedy.

In my view, § 8.2–607(3)(a) requires notice to Electrical Equipment a reasonable time after Kathryn Kerr discovered or should have discovered a breach of warranty and that the filing of suit cannot serve as the first notice. Most of the authority I find supports that view.

No such notice was given in this case.

(4) *The effect of no notice*

The Code states that without notice, the buyer is barred from any remedy.

Under the Code, the buyer, if notice is given, has a remedy against the seller and the remote manufacturers. § 8.2–318.

The manufacturers may take advantage of the lack of notice to the seller. *Goldstein v. Searle, supra.* Thus, the absence of notice to the seller prevents any action against the manufacturers as well as the seller.

The consequence is that the property damage claim of Kathryn Kerr should not have gone to the jury after it was developed that she did not give notice prior to bringing suit.

The judgment in favor of Kathryn Kerr in her property damage claim is set aside, with judgment given in favor of both defendants.

As notice is not required by a person other than the buyer, the verdict in favor of Kathryn Kerr, Executrix of Maynie Fisher, is not affected.

(5) *If filing suit was notice*

If the filing of suit was notice under § 8.2–607(3)(a), this Court would not sustain the verdict in the property damage case.

It is clear that the baseboard heater was thought to be the cause from the very beginning. (Tr. pp. 151–152). It would be a simple matter for Kathryn Kerr to advise Electrical Equipment, her seller, that there was a problem. The fact that her fire insurer actually hired the man who did the full investigation of the heater and produced the opinion which brought about the litigation cannot bury the fact that the heater was at all times a prime suspect. This man was hired in March, 1978 (Tr. p. 258), and Kathryn Kerr was paid for her property damage by check dated June 30, 1978. (Tr. p. 266.)

Without reciting all of the testimony on this point, but considering what Kathryn Kerr knew or should have known, and considering the testimony of David Malone (Tr. pp. 250–295), I think notice given by filing suit on December 5, 1978, over nine months after the fire, is not reasonable as a matter of law.

For cases on the point, see 93 A.L.R. 3d 387–402.

## II. *Sufficiency of the Evidence*

The testimony of the witnesses presented on behalf of the plaintiffs was adequate to go to the jury. On that evidence, the jury found for the plaintiffs. The Court does not see any basis for holding the evidence insufficient.

One issue was where did the fire start. Henrico County firemen who were present the day the fire occurred placed the starting point on the south wall, under the window, in the area of the baseboard heater. Bernard Cooper testified at length for the plaintiffs. Cooper said that there was a failure in the baseboard heater, that this failure was the source of ignition, and that the baseboard heater as designed is sus-

ceptible to the type of failure which occurred. (Tr. pp. 295–422, especially pp. 303–327 as to the point of origin of fire, pp. 330–333 as to the heater being damaged by electrical heat rather than external heat, pp. 337–343 as to the defective part of the heater, pp. 344–347 as to design.) He was cross-examined on all points. The defendants put on their witnesses as to point of origin of the fire and two experts, Kenneth Buske and Victor Giusti, in support of their position that the heater was not at fault.

The issue is not which side a court might think preponderated; the issue is whether there is evidence to support the jury verdict. In my judgment, there is sufficient evidence to support the verdicts.

### III. *Admissibility of Evidence*

During the cross-examination of Victor Giusti, Manager of Research and Development of Hunter Division, the court permitted counsel for the plaintiff, over objection, to inquire about Mr. Giusti's investigation of other claims involving an electrical discharge and burning from Hunter units. The witness admitted five or six and stated that the electrical discharge had not been prevented by a circuit breaker. He was allowed to explain why. (Tr. pp. 465–466.)

This testimony was considered by the court in the absence of the jury before being presented. (Tr. pp. 459–464.) The purpose for the testimony, as urged by counsel for the plaintiffs (p. 460), was to inquire how the prior instances occurred when there was a circuit breaker.

The transcript reveals no other objections to the cross-examination of Giusti.

The defendants object to this testimony and to references to it in the argument to the jury by plaintiffs' counsel. (Tr. pp. 729, 730.)

In his direct examination, Giusti testified that when he examined the heater, he found all four thermal protectors open, which led him to conclude that there was no current flowing into the unit at the time and that the thermal protectors had functioned properly. (p. 436.) The thermal protectors were designed to open at 300, and when one senses 300, it "opens the circuit to the heater . . ." and cuts it off. (pp. 443–444.) Giusti, while on direct, was unable to say what would happen "if anything has a short circuit in the area with the circuit breaker . . ." as he would have to know a lot more about the house wiring. He acknowledged that Cooper "may be right" on that point. (p. 446.)

Giusti also testified a some length with respect to design, safety factors (pp. 440–441), tests to see if the design did the job (pp. 441–442), and the operation of the thermal protectors. (pp. 443–444.)

The effect of a circuit breaker came into the case during the testimony of Cooper, the plaintiffs' expert. Cooper explained how the heater could fail and not throw a circuit breaker. (pp. 349–351.) The circuit breaker was referred to on other occasions in his testimony. (pp. 352–354, 371–372, 383–384.)

The workings or non-workings of a circuit breaker were involved in the case. The plaintiffs had presented evidence that the heater could fail and not throw a circuit breaker. The jury did not have to accept this testimony, nor did the plaintiffs have to be satisfied with Giusti's statement that Cooper "may be right." The circuit breaker was a part of the case.

Considering the fact that the circuit breaker was a part of the case, it was relevant and material for the plaintiff to produce evidence that the heater could fail without throwing a circuit breaker, and the plaintiffs' doing so by examining Giusti with respect to the type of baseboard heater involved strikes me as proper when viewed against Giusti's testimony to support the safety and design of the heater.

It is also noted that counsel for Hunter Division, in cross-examining Cooper, had Cooper admit that he had never looked at another Hunter heater that failed (p. 370), and then, before objection could be registered, said, "And there are thousands of them in use and haven't failed . . . ." (p. 371.)

The verdicts will not be disturbed on this ground.

### IV. *Statements to Jury*

After the jury had been deliberating for slightly over two hours, the jurors returned and stated they had not been able to reach a unanimous decision. The Court made a statement to the jurors and sent them back to continue deliberations. (Tr. pp. 791–793.)

Defendants say these comments "were improper and operated to improperly force a verdict by conveying to the jury that there had been a previous hung jury in a prior trial . . . ."

At the outset of the case, the Court, with no objection from counsel, told the jury, "This case has been tried before, and for reasons which are not of consequence here, which is nobody's fault, the case was not concluded." (Tr. pp. 6–9, 18.)

Counsel cites no authority in support of the position. Without agreeing that it could be error to advise a jury of a prior hung jury, the fact is that the jurors were not so advised.

No merit is seen in this point raised by the defendant.

### V. *After-Discovered Evidence*

Defendants have offered a photocopy of a Bill of Complaint filed in this Court on April 7, 1978, by Kathryn Kerr in which she asked that the will of Maynie Fisher be established. The significant part of the bill is the first paragraph in which she alleges the death of Maynie Fisher resulted from "fire caused by a defective baseboard heater."

This relates to the issue of notice in the property damage claim. Defendants contend it would be very material and relevant on the issue of good faith by Kathryn Kerr in giving notice, or in not giving notice prior to suit. Had evidence of this been presented, it would have been admissible. To justify a new trial on after-discovered evidence, the evidence (1) must have been discovered since the trial; (2) must be such that it could not have been secured in the exercise of reasonable diligence; (3) must not be cumulative, and (4) must be material and such as ought to bring opposite results in another trial. Friend, Law of Evidence in Virginia, § 7.

In *Fulcher v. Whitlow*, 208 Va. 34 (1967), the Supreme Court pointed out:

> It is not sufficient merely to say that the evidence could not have been discovered by the use of due diligence. The applicant for a new trial must set forth in affidavits facts showing what his efforts were to obtain the evidence and explaining why he was prevented from securing it.

208 Va. 34, 38.

It is apparent that this item of evidence was available in the Clerk's Office, across the hall from the courtroom in which the case was tried since April, 1978; it was there during the hung jury trial of September 12, 13, 14, 1979, and was there during the four days of this trial.

Without considering elements (3) and (4), the motion for a new trial on this ground is denied under *Fulcher v. Whitlow*.

### VI. *Assumption of Risk Instruction*

This instruction, marked "Hunter: El. Eq. A" was offered and refused in the death case.

It would tell the jury that there could be no recovery for the death of Maynie Fisher if she knew there was hazard or danger involved in leaving her bedroom and going into that part of the house involved in the fire.

The testimony relating to Maynie Fisher's actions comes from George Conway, a neighbor, who was the first person at the house after the fire was observed. (Tr. pp. 50–67.) He apparently awakened Mrs. Fisher and told her to get out of the house because of the fire. She left her bedroom, which was not in that part of the house from which the fire was visible, but was overcome before reaching the front door.

In retrospect, this may have been an error in judgment, but there is an insufficiency of evidence as to exactly what confronted Mrs. Fisher to justify an assumption of the risk instruction.

Counsel for the defendants have cited no authority in support of their position. The Court finds no merit in it.

### VII. *Kathryn Kerr As a Beneficiary*

Defendants also argue that Kathryn Kerr, having failed to give the notice required by § 8.2–607(3)(a), should not be allowed any personal recovery as a beneficiary in the death action of her mother. Virginia does recognize the rule that a person whose negligence contributes to an accident cannot recover damages for himself. *Godsey v. Tucker*, 196 Va. 469 (1954); *City of Danville v. Howard*, 156 Va. 32 (1931). This appears to be based on the thought that no one can acquire a right of action by his own negligence.

Kathryn Kerr's failure to give notice prior to suit in no way brought about the cause of action. She does not profit by that failure.

The most that can be said is that Kathryn Kerr puts in jeopardy her personal right of action by failing to give notice but does not bar that of a third party. And if she is otherwise a beneficiary of that party who has a right of action, this Court is aware of no rule of law which would prohibit her sharing, as a beneficiary, in a recovery by that third party. She has that statutory right; her failure to give notice did not help create the cause of action.