ROCHELLE GOLDSTEIN, Plaintiff-Appellant, *v.* G. D. SEARLE & CO., Defendant-Appellee.

First District (5th Division)   No. 77-717

Opinion filed June 2, 1978.—Rehearing denied July 27, 1978.

Louis G. Davidson and Ronald A. Drumke, both of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, William P. Richmond, Thomas F. Tobin, and Charles B. Lewis, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals the grant of summary judgment in favor of defendant and presents the following issues for review: (1) whether, to maintain an action for breach of implied warranty, a subpurchaser must give notice of breach to a remote manufacturer; and (2) whether the trial court erred in finding that her notice to the remote manufacturer was unreasonable as a matter of law.

At the time summary judgment was entered, the trial court had before it the pleadings, plaintiff's answers to defendant's interrogatories, plaintiff's discovery deposition, and defendant's stipulation of certain facts. These documents revealed that in 1966, at the age of 39, plaintiff began taking an oral contraceptive (Ovulen) manufactured by defendant. In her complaint she alleged that on October 15, 1967, she last purchased a supply of the drug from a retailer (not a party to this action); that from October 16 to 21, 1967, she ingested quantities of the drug in accordance with her physician's instructions; that she relied upon defendant's implied warranty that such drug was safe for human consumption; that on October 21, 1967, after ingesting the drug and as a proximate result of defendant's breach of implied warranty, she suffered a cerebral vascular accident (stroke) from which she became and will continue to remain partially paralyzed for the remainder of her life; that by filing suit on October 15, 1971, she gave reasonable notice of breach to defendant and that notice of the blood clotting effect of the drug which constitutes the

basis for the breach of warranty was given to defendant prior to October 21, 1967.

Defendant stipulated that at the time of and prior to plaintiff's injury, it was aware of complaints by Ovulen consumers of injuries similar to those allegedly sustained by plaintiff and, in her deposition, plaintiff testified that she first learned of Ovulen's potential for causing strokes when she read of the Nelson Senate Committee Hearings regarding oral contraceptives in January 1970.

The trial court found that section 2—607(3)(a) of the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1975, ch. 26, par. 2—607(3)(a)) required plaintiff, a subpurchaser, to give notice of breach to defendant, a remote manufacturer, as a prerequisite to maintaining suit for breach of implied warranty and that as a matter of law such notice was not given by plaintiff within a reasonable time.

OPINION

Plaintiff first contends that suit for breach of implied warranty is not barred by the failure of a subpurchaser to give notice of breach to a remote manufacturer.

Initially, it should be noted that plaintiff relies heavily upon decisions which have held that third-party beneficiaries need not give notice as a prerequisite to maintaining a suit for breach of implied warranty (*e.g.*, *Tomczuk v. Town of Cheshire* (1965), 26 Conn. Sup. 219, 217 A.2d 71; *Chaffin v. Atlanta Coca Cola Bottling Co.* (1972), 127 Ga. App. 619, 194 S.E.2d 513; *Frericks v. General Motors Corp.* (1976), 278 Md. 304, 363 A.2d 460), and she argues that those decisions encompass issues analogous to those in the case at bar, because a subpurchaser and a third-party beneficiary stand upon the same footing in relation to remote manufacturers. We cannot agree, for the obvious reason that a subpurchaser, unlike a third-party beneficiary, is a buyer in the distributive chain. Likewise, we do not find helpful the authority cited by defendant for the proposition that a subpurchaser must give notice of breach to a remote manufacturer. Those cases, *Pritchard v. Liggett & Myers Tobacco Co.* (3d Cir. 1961), 295 F.2d 292, *Redfield v. Mead, Johnson & Co.* (1973), 266 Ore. 273, 512 P.2d 776, and *San Antonio v. Warwick Club Ginger Ale Co.* (1968), 104 R.I. 700, 248 A.2d 778, have all assumed the existence of such a requirement without revealing all supporting legal reasoning.

The Code provides that an injury action grounded upon breach of implied warranty be brought within four years (Ill. Rev. Stat. 1975, ch. 26, par. 2—725), but only if there is compliance with all Code requirements (*Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550). The issue presented here is whether such compliance mandates that a

subpurchaser notify a remote manufacturer of breach under the terms of section 2—607(3)(a).

■■ This section provides that "[w]here a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy * * *." (Ill. Rev. Stat. 1975, ch. 26, par. 2—607(3)(a).) The Code generally defines the terms buyer as "a person who buys or contracts to buy goods" (Ill. Rev. Stat. 1975, ch. 26, par. 2—103(1)(a)) and seller as "a person who sells or contracts to sell goods" (Ill. Rev. Stat. 1975, ch. 26, par. 2—103(1)(d)). However, as a matter of syntax, such definitions are limited by the introductory phrase "[w]here a tender has been accepted." (See *Tomczuk v. Town of Cheshire.*)

> "The term 'tender' is used in this Article in two different senses. In one sense it refers to 'due tender' which contemplates an offer coupled with a present ability to fulfill all the conditions resting on the tendering party and must be followed by actual performance if the other party shows himself ready to proceed. Unless the context unmistakably indicates otherwise this is the meaning of 'tender' in this Article and the occasional addition of the word 'due' is only for clarity and emphasis. At other times it is used to refer to an offer of goods or documents under a contract as if in fulfillment of its conditions even though there is a defect when measured against the contract obligation. Used in either sense, however, 'tender' connotes such performance by the tendering party as puts the other party in default if he fails to proceed in some manner." (Ill. Ann. Stat., ch. 26, par. 2—503, Uniform Commercial Code Comment, at 357-58 (Smith-Hurd 1963).)

Thus, as a condition precedent to buyer's duty to accept the goods and to pay for them, the seller must tender them by placing and holding conforming goods at the buyer's disposal. (Ill. Rev. Stat. 1975, ch. 26, pars. 2—503, 2—507.) As admitted by defendant during oral argument before this court, the only tender which could have been accepted by plaintiff was that of her immediate seller, the retailer. Therefore, because section 2—607(3)(a) provides for notification to the seller "[w]here a tender has been accepted," we believe that the word "seller" as used in that section necessarily refers only to the immediate seller and, accordingly, we conclude that a buyer is required to give notice of breach only to his immediate seller.

This conclusion, however, does not end our inquiry because, under the Code (as will be detailed hereafter), giving or the failure to give notice to the immediate seller does affect the remote manufacturer. Defendant, in making its argument that notice to the remote manufacturer is required, relied heavily upon the following comment concerning decisions which

have interpreted section 2—607(3)(a) as requiring notice to the immediate seller but not to the remote manufacturer:

> "This may not be unfair to manufacturers when the buyer sues both the retailer and the manufacturer, for the retailer will very likely notify the manufacturer, especially when the retailer is one who (for example, an auto dealer) buys his entire inventory from one manufacturer. On the other hand, when the buyer sues only the manufacturer, we think courts should require the buyer to notify the manufacturer of the defect. The manufacturer may bear responsibility for the buyer's losses and needs the protection of notice at least as much as a retailer. As a matter of logic, there is no reason to distinguish between retailers and manufacturers, insofar as their respective rights to notice are concerned. The retailer's right to notice derives from the fact that the buyer dealt directly with him. When, therefore, the manufacturer is the only defendant, the buyer should have to give him notice." White & Summers, Uniform Commercial Code 347 (1972).

■■ We believe that this criticism misses the point, as it addresses itself to section 2—607(5)(a) which deals with the situation where suit has been filed against rather than notice being given to the intermediate seller. This section provides:

> "Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over
>
> > (a) he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound." (Ill. Rev. Stat. 1975, ch. 26, par. 2—607(5)(a).)

The relevant inquiry here, however, is whether the Code requires that the notice given to the immediate seller be transmitted upstream whether or not suit is ultimately filed against the intermediate seller. It appears to us that section 2—607(3)(a) provides such requirement by viewing the acceptance of each tender of the goods moving down the distributive chain as a distinct and separate transaction. In this manner, whether one or more of those upstream of the consumer in the distributive chain is ultimately sued for breach of implied warranty by the consumer, the Code envisions that when the consumer's notice of breach is given to his immediate seller, such person to preserve any right of action he may have for breach of implied warranty will give notice to his immediate seller, and so on upstream until the seminal point of the distributive chain is reached. Ill. Rev. Stat. 1975, ch. 26, par. 2—607(3)(a).

The demise of privity in personal injury actions grounded upon breach of implied warranty causes warranties to flow downstream with the goods through any number of intermediate sales eventually enuring to the benefit of the ultimate consumer. (See *Berry v. G. D. Searle & Co.; Davis v. Van Camp Packing Co.* (1920), 189 Iowa 775, 176 N.W. 382.) The implied warranty of the manufacturer is tendered along with the goods to the ultimate consumer by his immediate seller, and notice to the immediate seller in the ordinary course of events enures to the benefit of the remote manufacturer. We, therefore, believe the rule to be that the remote manufacturer may raise as a defense to the maintenance of suit by a subpurchaser for breach of implied warranty the latter's failure to reasonably notify his immediate seller of the breach except that, for obvious reasons, such a defense should be unavailable where the manufacturer has actually been given notice of breach by the subpurchaser. Such a rule obviates placing a duty upon the unsophisticated consumer to notify a party with whom he has not dealt (*Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 377 P.2d 897, 27 Cal. Rptr. 697) and yet affords the remote manufacturer (whether sued alone or with others) the protection of the Code; *i.e.*, the avoidance of being "confronted with stale claims thereby preventing the marshaling of evidence for a defense." *Berry v. G. D. Searle & Co.*, 56 Ill. 2d 548, 555, 309 N.E.2d 550, 555.

In the instant case, plaintiff did not allege that notice was given to her immediate seller; but, instead, asserted that the filing of her suit was direct notice to defendant. Thus, we must resolve the questions of whether the filing of the suit sufficiently complies with the notice requirement of section 2—607(3)(a) of the Code and, if so, whether in the instant case it was notice given within a reasonable time. Defendant suggests that the intent of the notice requirement is that it precede the filing of suit; that even if notice is properly given by filing suit, it is unreasonable where, as here, it was done some 48 months after the occurrence of the traumatic event complained of and, further, that such a period of delay was prejudicial because its ability to marshal evidence for its defense was impaired. We believe, however, that the following comment is significant:

> "The time of notification is to be determined by applying commercial standards to a merchant buyer. 'A reasonable time' for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.
>
> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which

saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection [citation]. Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." Ill. Ann. Stat., ch. 26, par. 2—607, Uniform Commercial Code Comment, at 453-54 (Smith-Hurd 1963).

In addition to the above considerations, the timeliness of a notice which does not result in prejudice to the defendant has not been viewed as unreasonable (*Pritchard v. Liggett & Myers Tobacco Co.*) and, whether notice of breach is reasonable is ordinarily a question of fact which is to be determined by looking to all the circumstances of the case. (*Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 354 N.E.2d 415; *Overland Bond & Investment Corp. v. Howard* (1972), 9 Ill. App. 3d 348, 292 N.E.2d 168.) However, where no inference other than unreasonableness can be drawn from the evidence, the question can be decided as a matter of law. Williston on Sales §22—11, at 304 (4th ed. 1974).

Here, for the following reasons, we do not believe the only inference which reasonable men could draw from all the facts and circumstances is one of unreasonableness.

First, defendant argues that the phrase "normal settlement through negotiation" taken from the above-quoted comment necessarily connotes prelitigation negotiation and settlement which would preclude the filing of a complaint as the acceptable means of giving reasonable notice. We disagree, as it appears to us that such should not be the necessary implication, particularly in light of the less stringent policy toward retail consumers and of the rule that notice need not be in any particular form. *Murray v. Kleen Leen, Inc.; Davidson v. Wee* (1963), 93 Ariz. 191, 379 P.2d 744. But see *Leeper v. Banks* (Ky. 1972), 487 S.W.2d 58.

Second, defendant maintains that because in a products liability action the statute of limitations begins to run when plaintiff first knows of his injury by a sudden traumatic event and because the notice requirement in implied warranty cases has been viewed in the same light as a statute of limitations in that each is intended to prevent the assertion of stale claims (*Berry v. G. D. Searle, Inc.*), plaintiff should have known of the breach of the implied warranty at the time of her stroke, which preceded the filing of suit by 48 months. Plaintiff, however, contends that she did not associate her stroke with Ovulen, and in her deposition testified that she

first learned that it may have been the cause when she read, some 22 months prior to filing suit, of the Nelson Senate Committee Hearings which linked oral contraceptives to the occurrence of strokes.

While a sudden traumatic event resulting in injury is knowledge to a products complainant that a cause of action may exist which ultimately may be successfully prosecuted if the causal agent is discovered within two years, it appears to us that a person complaining of a breach of implied warranty must have some knowledge of the identity of the causal agent before he or she may ascertain to whom notice should be directed. In this regard, defendant has called our attention to the fact that plaintiff appended a list of articles appearing in medical journals which dealt with a possible coincidence between oral contraceptives and certain side effects and, as all of these articles had been published prior to her stroke, it argues that she should have known of the causal agent at the time of her stroke. In another context, this argument might be persuasive; but, here, plaintiff was a consumer rather than a commercial user. While the latter might be expected to peruse articles of that type in trade or professional journals, this is not the case with a consumer such as plaintiff. We have noted the existence of her communicational difficulties from our reading of her discovery deposition and, if her physical and mental condition was as debilitating as alleged, her ability to discern the causal agent, whether by perusing medical journals or otherwise, would be greatly reduced. In the light thereof, we believe that reasonable men could disagree as to whether plaintiff should have known of the breach prior to the time the Nelson Committee Hearings came to her attention. Furthermore, even an extended period of time preceding notice has not been viewed as unreasonable where such notice comes as no surprise to defendant. (*Boeing Airplane Co. v. O'Malley* (8th Cir. 1964), 329 F.2d 585.) The defendant in *O'Malley* knew that a particular helicopter sold to plaintiff did not conform to the representations contained in its promotional materials, and we find it analogous to defendant's admission here that it knew of numerous complaints similar to plaintiff's prior to the time she suffered her stroke. This admission, coupled with its knowledge that thereafter Ovulen continued to be sold and consumed, indicates that the Goldstein complaint may not have taken defendant by surprise.

Moreover, while it is true that delay in giving notice in many instances results in faded memories and lost witnesses, thereby prejudicing defendants, it appears that this may not be so here as, from the record which discloses defendant's prior knowledge of similar complaints, it appears that defendant's position is similar to what it would have been had plaintiff given notice on the very day of her stroke but had not filed suit until four years later. Conceivably, defendant would have already

investigated the possibility of a stroke resulting from the ingestion of Ovulen and the remaining details normally could only be obtained through the discovery process after suit was filed.

In view of the foregoing, we conclude that a genuine issue of fact was presented on the reasonableness of plaintiff's notice and that summary judgment was therefore inappropriate. We point out, however, that we have made no finding that the notice was reasonable, as this question remains to be determined in the trial court.

For the reasons stated, the judgment appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.