Nancy SNELL and Timothy A.
Snell, Plaintiffs,

v.

G.D. SEARLE & CO., Defendant.

Civ. A. No. 81–AR–0983–S.

United States District Court,
N.D. Alabama, S.D.

Sept. 28, 1984.
On Motion to Dismiss Oct. 10, 1984.

R. Gordon Pate, Hare, Wynn, Newell & Newton, Birmingham, Ala., for plaintiffs.

Lawrence B. Clark, Augusta S. Dowd, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ACKER, District Judge.

On March 13, 1984, this court denied Searle's motion for summary judgment as to two of plaintiffs' claims or causes of action, the first based on an alleged breach of an implied warranty and the second based on Searle's alleged wilful or wanton conduct in that Searle is charged with continuing to market the IUD after notice of its dangerous propensities. After further discovery, Searle has now refiled its motion for summary judgment as to each of the said remaining two counts and has filed an alternative motion to dismiss the so-called wanton count as a sanction for plaintiffs' having failed to comply with an order of this court bearing crucially on the wanton count.

### The Breach of Warranty Claim

■ As to the Snells' claim for breach of implied warranty, the undisputed fact is that they failed to notify Searle within a reasonable time after they discovered or should have discovered any breach. Ala. Code § 7-2-607(3)(a) (1975) provides:

> The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

Nancy Snell would escape from this notice requirement by saying that there is no evidence which can support an ultimate finding of fact that she was a "buyer" of Searle's IUD within the meaning of § 7-2-607(3)(a). There are no Alabama cases precisely on point. While it is undisputed that Nancy Snell was the ultimate consumer, there is no evidence that she bought the IUD directly from Searle, or, for that matter, from anybody else. Therefore, she must be given the benefit of the doubt under Rule 56. For the sake of the argument, the court will assume that, as alleged in the complaint, she was "fitted" with the device, implying that the device was prescribed and dispensed by her physician. There is as yet no factual development as to whether or not the cost of the IUD was included in the physician's charge or was ordered and paid for by Nancy Snell at a pharmacy. While this court in *Scroggins v. A.H. Robins Co.*, CV 83-AR-2304-S did, in granting summary judgment for another IUD manufacturer, suggest that notice of a breach of warranty must be given within a reasonable time under the requirements of § 7-2-607(3)(a), the real basis for the decision in *Scroggins* was the absolute bar of the four year statute of limitations under the U.C.C. for a breach of warranty, and the court will not bootstrap a decision in the instant case from its dictum in *Scroggins*.

The most important case which requires analysis on the notice issue is the case cited by the Snells, namely, *Simmons v. Clemco Industries*, 368 So.2d 509 (Ala.1979). In *Clemco*, the Supreme Court of Alabama construes the word "buyer" as used in § 7-2-607(3)(a) literally and excuses a simple "warranty beneficiary" from the notice requirement. *Clemco* does not answer the question in the instant case. The Alabama court there dealt *not* with an injury sustained by an owner or an actual consumer of an allegedly defective product, but rather with a separate, third party beneficiary of the implied warranty, namely, an employee of the ultimate consumer. The Ala-

bama court expressly recognized the statutory definition of a "buyer" as "a person who buys or contracts to buy goods". 368 So.2d at 513; Ala.Code § 7–2–103(1)(a) (1975). If Nancy Snell here paid the slightest consideration to her physician or to her pharmacist for her IUD, she thereupon became a "buyer" in the chain of distribution, as opposed to a simple third party beneficiary of any implied warranty of merchantability or of fitness which may have accompanied the product and ran to the benefit of the indirectly exposed public. In all likelihood, Nancy Snell "bought" this IUD from her physician. At this point, however, this crucial factual issue remains unresolved, and therefore there is no basis for a Rule 56 determination. While Nancy Snell's case is similar to *Clemco* in that she did not buy the product from the *defendant,* her case is *dissimilar in a much more important and crucial respect,* namely, in that she was not an employee or a simple bystander injured by a defective product owned by someone else. In *Clemco* the Alabama court made sense when it concluded that a non-buyer who is injured should not be required to notify the seller. As to a non-buyer there logically can be no "seller". This rationale in *Clemco* is echoed in *Mattos, Inc. v. Hash,* 279 Md. 371, 368 A.2d 993 (1977); *Frericks v. General Motors Corp.,* 278 Md. 304, 363 A.2d 460 (1976); *McKnelly v. Sperry Corp.,* 642 F.2d 1101 (8th Cir.1981); and *Tomczuk v. Town of Cheshire,* 26 Conn.Sup. 219, 217 A.2d 71 (1965). Unfortunately, *Clemco, Mattos, Frericks, McKnelly* and *Tomczuk* provide no final answer as to what notice of breach Nancy Snell was required to give, if any. As stated, Nancy Snell was probably not simply a third party beneficiary of an implied warranty, but was a "buyer", who "bought" the IUD from her physician or from her pharmacist. If the evidence demonstrates that she was such a "buyer", she was obligated under § 7–2–607(3)(a) to notify her "seller" of any breach of warranty which took place. The leading case on point is from Illinois, which like Alabama, acknowledges the demise of 'privity" as a prerequisite for recovery in personal injury

actions grounded on breach of warranty. *Goldstein v. G.D. Searle & Co.,* 62 Ill. App.3d 344, 19 Ill.Dec. 208, 378 N.E.2d 1083 (1978). However, the Illinois court speaks directly to the notice requirement of § 7–2–607(3)(a) [for Nancy Snell] by recognizing that a remote manufacturer [Searle] may raise as a defense to the maintenance of a suit by a *subpurchaser* based on the subpurchaser's failure reasonably to notify *his immediate seller* of the alleged breach of warranty. The Illinois court says that "such a rule obviates placing a duty upon a consumer to notify a party with whom he has not dealt", citing *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1963). The reasonable assumption in Illinois, as it should be in every U.C.C. jurisdiction, is that the seller who sold directly to the injured, complaining consumer will transmit the complaint upwards in the chain of distribution so that notice ultimately will reach the true culprit. This expectation, which is implicit in § 7–2–607(3)(a) is well articulated in *Firestone Tire & Rubber Co. v. Cannon,* 53 Md.App. 106, 452 A.2d 192, 195 (1982). In the instant case, the Snells have filed no affidavit to suggest that either of them ever notified the physician or the pharmacy of any alleged breach of implied warranty, but the pertinent facts as to the existence or nonexistence of such notice not having been developed, and the pertinent facts with respect to whether or not the IUD was purchased by Nancy Snell as opposed to being inserted in her uterus as an experiment or as a gift, are not undisputed. Thus the warranty claim does not permit Rule 56 treatment. For what it may be worth to the parties, the court is of the opinion that if Nancy Snell paid any consideration whatsoever for the IUD, she became a "buyer" and was under an obligation to give reasonable notice to the "seller", whoever that may have been, and that if she did not do so within a reasonable period from her discovery of the breach, she is barred under § 7–2–607(3)(a) as against Searle. For the moment, however, defendant's motion for summary judgment

as to the implied warranty claim must be denied.

### The Wanton Count

■ Searle's motion for summary judgment aimed at the claim for wilful or wanton conduct is based on Searle's contention that any such cause of action is barred by the Alabama one year statute of limitations for trespass-on-the-case. Ala.Code 6–2–39 (1975). The court is faced with a dilemma, whether to follow the Fifth Circuit in *Doucet v. Middleton*, 328 F.2d 97 (5th Cir.1964), where the Fifth Circuit stated that an allegation of wilful or wanton conduct states a cause of action in trespass in Alabama and therefore is controlled by the Alabama six year statute of limitations, or to follow subsequent Alabama court decisions such as *Sasser v. Dixon*, 290 Ala. 17, 273 So.2d 182 (1973); *City of Fairhope v. Raddcliffe*, 48 Ala.App. 224, 263 So.2d 682 (1972); *Cochran v. Hasty*, 378 So.2d 1131 (Ala.Civ. App.1979); *Stozier v. Marchich*, 380 So.2d 804 (Ala.1980); *Dumas v. Southern Guaranty Ins. Co.*, 408 So.2d 86 (Ala.1981); and *Citizens Bank and Sav. Co. v. Wolfe Sales Co.*, 394 So.2d 941 (Ala.1981), which badly muddy, erode or eliminate this rigid way to achieve a longer period of limitations. The distinction between trespass and case often is a difficult one. Nancy Snell alleges in paragraph 5(g) of her complaint that Searle continued to market its IUD in reckless disregard of her health and the health of others after Searle had notice or should have had notice of the dangerous propensities of its device. Such conduct, if proven, would clearly not be an invasion of plaintiff's person or property and is closer akin to a wanton failure to inspect, or a wanton failure to supervise, or a wanton failure to pay an insurance claim, or a wanton failure to provide adequate safety measures, the kinds of misconduct discussed in the more recent Alabama decisions which have found the one year statute of limitations for trespass-on-the-case applicable. This court is satisfied that the more recent expressions by the Alabama courts take away from personal injury plaintiffs the right to select a six year statute of limitations simply by averring and proving some "wanton" or "wilful" conduct, but rather require allegation and proof of an intentional, direct application of force. In the instant complaint, the Snells do not even use the word "wanton" or the word "wilful" to describe Searle's conduct, but rather allege that Searle "continued to market this product in gross and reckless disregard of the health of the plaintiff and other citizens". This conduct, if proven, constitutes case and not trespass, as this court understands the present law of Alabama. This court finds no Alabama decision which holds that such allegations state a cause of action for trespass as opposed to case. On this basis, defendant's motion for summary judgment as to the paragraph 5(g), the so called "wanton count", should be granted, but the Rule 56 question is mooted by the fact that Searle's motion to dismiss the said count will be granted for the reasons which will next be discussed.

■ Paragraph 5(g), the so-called "wanton count", if it has any efficacy whatsoever, depends upon on the allegation that Searle "had notice or should have had notice of the dangerous propensities of this device". On August 11, 1981, Searle propounded interrogatories clearly designed to obtain from plaintiffs the information upon which they base the said allegation and can prove it. On December 2, 1981, plaintiffs answered by merely stating: "See medical records and complaint". On September 7, 1984, Searle moved to require plaintiffs to respond more fully, and on September 11, 1984, this court issued the following order:

> FURTHER ORDERED that plaintiffs fully answer defendant's interrogatories and fully respond to defendant's requests for production within 5 days from the date of this order.

> Defendant's motion to dismiss is RESERVED.

> Failure by plaintiffs to comply with this order will result in the automatic dismissal of this action.

On September 14, 1984, approximately three weeks before trial, plaintiffs respond-

ed to this interrogatory designed to obtain the information upon which plaintiffs propose to prove that the marketing of the product was in "reckless and gross disregard of the health of the plaintiff ... after the defendant had notice or should have had notice of the dangerous propensities of this device ..." by simply saying: "Unknown at this time". This "answer" three weeks before trial is wholly unsatisfactory. The court wonders when plaintiffs expect to come by proof of this most crucial allegation, which was first made on June 25, 1981. The court cannot avoid the conclusion that defendant's motion to dismiss the so-called "wanton count", paragraph 5(g), is well taken, and is due to be granted, as the only sanction now appropriate under Rule 37, F.R.Civ.P.

An appropriate order will be entered.

### ON MOTION TO DISMISS

When this case came on for trial on October 9, 1984, two facts appeared, one from statement of counsel in open court and the other by written stipulation. First, plaintiffs never furnished to defendant the name of any expert witness. Secondly, plaintiffs concede that no notice of breach of warranty was given by plaintiffs to anyone as to the IUD in question, in particular to the physician who inserted the offending IUD and whose bill plaintiffs paid.

The first fact is significant because of defendant's pending motion for the sanction of dismissal for plaintiffs' failure to offer their expert for deposition as required by the orders of this court. The second is significant because the court allowed defendant to refile its motion for summary judgment as to the remaining count or cause of action based on breach of warranty in light of plaintiffs' admission of a failure to notify the "seller" of any breach of warranty.

Although the court would not allow plaintiffs now to present an expert witness in this case if it were remanded after any appeal by plaintiffs, the court is not prepared to grant defendant's motion to dismiss, particularly when the motion is rendered moot by the granting of defendant's motion for summary judgment because of plaintiff's failure to provide any notice of breach of warranty even to the immediate seller, the reasons for which have previously been stated.

An appropriate order will be separately entered.