**Timothy and Bernadette LLOYD, et al., Plaintiffs,**

v.

**GENERAL MOTORS CORP., et al., Defendants.**

Civil No. BEL–07–2487.

United States District Court, D. Maryland.

Sept. 11, 2008.

thy A. Wisniewski, Thompson Coburn LLP, St. Louis, MO, for Defendants.

### *MEMORANDUM*

BENSON EVERETT LEGG, Chief Judge.

On June 15, 1999, Plaintiffs Timothy and Bernadette Lloyd filed a class action complaint against a group of American auto manufacturers for damages arising from the cost of replacing allegedly defective seating systems. Initially filed in the Circuit Court for Montgomery County, the case was removed to this Court, and in September 2007 Defendants General Motors Corp. ("GM"), Ford Motor Company ("Ford"), Chrysler LLC ("Chrysler"), and Saturn Corp. ("Saturn") moved to dismiss the Plaintiffs' fourth amended complaint or, in the alternative, for a more definite statement. The Court heard oral argument on the Defendants' motions on August 14th, 2008 and is now prepared to issue its ruling. For the following reasons, the Defendants' Motions are GRANTED in PART and DENIED in PART.

Stephen Howard Ring, Stephen H. Ring PC, Germantown, MD, Fred Thompson, Frederick J. Jekel, Kevin R. Dean, Rhett D. Klok, Suzanne Lafleur Klok, William Taylor Lacy, William H. Narwold, Motley Rice LLC, Mount Pleasant, SC, William F. Askinazi, Law Offices of William F. Askinazi, Germantown, MD, for Plaintiffs.

Karen Natalie Walker, Bridget Kathleen O'Connor, Kirkland and Ellis LLP, Washington, DC, Brian Patrick Kavanaugh, Charles William Douglas, Jr., J. Andrew Langan, Kirkland and Ellis LLP, Chicago, IL, John David Wilburn, Andrew John Trask, Derek Handley Swanson, John Tracy Walker, IV, Michael J. Elston, McGuire Woods LLP, Mary Catherine Zinsner, Richard E. Hagerty, Troutman Sanders LLP, McLean, VA, John W. Rogers, Ka-

### I. Background

The Lloyds filed suit in the Circuit Court for Montgomery County over nine years ago, alleging that the seatbacks in certain of the Defendants' automobiles were unreasonably dangerous because unable to withstand the force of a moderate impact rear-end collision. Docket No. 2. In addition to claims sounding in negligence, strict liability, and a host of other theories, the Lloyds' Complaint alleged that the Defendants conspired with one another to, among other things, conceal the defective seating systems in their automobiles from the public. *Id.* at ¶ 54. As originally pled, the Lloyds' Complaint named only GM, Ford, and Chrysler as defendants, and failed to specify the make and model of the Lloyds' automobile.

In July 1999, after the Lloyds amended their complaint to name Saturn as an additional defendant, Docket No. 5, the various Defendants moved jointly to dismiss the complaint on substantive grounds. *See* Docket Nos. 7–9. In a separate motion, Chrysler and Ford argued that the Lloyds lacked standing to bring a claim against them because they did not own a vehicle manufactured by either company.[1] Docket No. 10.

In conjunction with their brief opposing the Defendants' Motions to Dismiss, the Lloyds filed a second amended complaint on November 12, 1999, adding several new named plaintiffs[2] (some of whom allegedly owned Chrysler or Ford vehicles) and stating that the Lloyds themselves owned a 1995 Saturn. Docket No. 11. The Lloyds filed a third amended complaint[3] later the same day, this time adding a claim for injunctive relief. Docket No. 12.

In response to the amended pleadings, the Defendants moved jointly to dismiss, and Chrysler and Ford moved separately to strike, the Lloyds' third amended complaint. Docket Nos. 19–21. The Defendants' motions raised a number of arguments, including (i) that the Plaintiffs had failed to plead actual injury; (ii) that certain of the Plaintiffs' claims were barred

by the economic loss doctrine; (iii) that the Plaintiffs' claims were barred by the statute of limitations; and (iv) the Plaintiffs lacked standing to sue. *See* Docket Nos. 20–22.

In March 2000, the Circuit Court for Montgomery County granted the Defendants' Motion to Dismiss, ruling that the Plaintiffs had failed to plead actual injury and that their claims were barred by the economic loss doctrine. As these conclusions were sufficient to dispose of all of the Plaintiffs' claims, the Circuit Court made no determination as to whether the Plaintiffs' claims were time-barred or whether they lacked standing to sue.

The Plaintiffs appealed the Circuit Court's decision, and, although the Court of Special Appeals affirmed the dismissal in July 2002, the Maryland Court of Appeals reversed. *Lloyd v. General Motors Corp.*, 397 Md. 108, 916 A.2d 257 (2007). More than four years after the case was argued, the Court of Appeals held that even in the absence of actual personal injury, the Plaintiffs could recover for the economic loss of replacing their allegedly defective seating systems because they had adequately pled that the systems posed an unreasonable risk of death or

---

**1.** Chrysler and Ford also argued that the Lloyds' conspiracy count failed to state a claim, and was, therefore, inadequate to keep either Defendant in the case. *Id.* at 6, n. 2.

**2.** The additional named plaintiffs were: Gregory Ferguson, owner of a 1999 Saturn; Taylor Ruhl, owner of a 1995 Saturn; Mary Devine, owner of a 1996 Dodge Neon; Frances K. Patsan, owner of a 1995 Dodge Stratus; Anita Patsan, owner of a 1996 Dodge Neon; Katherine F. Wilson, owner of a 1995 Chevrolet Cavalier; and Stephanie Dugan, owner of a 1994 Mercury Sable. *See* Docket No. 11.

**3.** By the time of their third amended complaint ("TAC"), the Lloyds had taken measur-

able steps to sharpen the conspiracy allegations set forth in their original pleading. Whereas the original complaint claimed only that the Defendants had "conspired among themselves and with others" to accomplish a series of unlawful objectives, Docket No. 2, ¶¶ 54–55, the TAC alleged that the Defendants had agreed to "share and coordinate knowledge, data, research activity, and decisions" as part of a joint effort to conceal their defective seating systems and mislead federal regulators. Docket No. 12, ¶¶ 76, 125. The TAC also alleged multiple overt acts in furtherance of the conspiracy, including a coordinated effort by the Defendants to defend against legal claims and media criticism by intentionally misrepresenting the crashworthiness of their seats. *Id.*, ¶¶ 74, 48, 51.

personal injury. *Id.* at 262, 294. The Court of Appeals also held that the TAC alleged sufficient facts to adequately plead the elements of civil conspiracy. *Id.* at 284–85. ("The facts pled in the [TAC] were not vague assertions, but rather were pointed facts alleging specific acts of conspiracy on the part of the [Defendants].")

Following the reinstatement of their claims, the Plaintiffs filed a fourth amended complaint ("FAC") on August 19, 2007. Docket No. 46. Among other alterations, the FAC added five new named plaintiffs,[4] three of whom had never been part of the putative class, and significantly expanded the class of vehicles containing the alleged defect. In addition, the FAC stated that the Lloyds had disposed of their 1995 Saturn and subsequently acquired a 1997 Dodge Minivan. *Id.* ¶ 11.

Asserting that these amendments rendered the case removable under the Class Action Fairness Act of 2005 ("CAFA"), the Defendants transferred the proceedings to this Court on September 18, 2007. Docket No. 1. After the case was removed, the Defendants filed two motions to dismiss the FAC: (i) a joint motion to dismiss or, in the alternative, for a more definite statement; and (ii) a separate motion by Chrysler and Ford, reviving their argument that the Lloyds lacked standing to sue. Docket Nos. 66–68.

Before responding to the Defendants' motions, the Plaintiffs moved to remand the action back to the Maryland state courts. Docket No. 193. While the motion to remand was pending, the Court postponed briefing on the Defendants' motions to dismiss. On June 6, 2008, the Court declined to remand the case, ruling that the material alterations in the fourth

amended complaint "commenced" a new action under Maryland law, rendering the case removable under the terms of the CAFA. Docket No. 126, at 7–8; *Lloyd v. General Motors Corp.*, 560 F.Supp.2d 420 (D.Md.2008).

After their motion to remand was denied, the Plaintiffs responded separately to each of the pending motions to dismiss. Docket Nos. 135–136. The Defendants then filed two replies: (i) a joint reply on behalf of all defendants, and (ii) another by Chrysler and Ford in support of their separate motion to dismiss. Docket Nos. 137–38. The Court heard oral argument on the Defendants' motions on August 14th, 2008.

With this procedural background in mind, we turn to the instant dispute.

## II. Discussion

As we have discussed, Chrysler and Ford argue in a separate motion to dismiss that the Plaintiffs lack standing to bring a claim against them. By contrast, the contested questions in the joint motion to dismiss are (i) whether the Plaintiffs' claims are barred by the statute of limitations, and (ii) whether certain allegations in the FAC fail to state a claim. Mindful that standing is a fundamental component of the Court's subject matter jurisdiction, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), the Court will address Chrysler's and Ford's motion before considering the joint motion to dismiss. *See Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977, 984 (D.Md.2002) ("[R]esolution of the question of standing necessarily takes precedence over the question whether [a party has] stated a claim upon which relief can

**4.** The additional named plaintiffs were: Joan Canterbury, owner of a 1999 Chevrolet Silverado; Thomas Dillingham, owner of a 1998 Ford Explorer; Scott Orbach, owner of a 1999 Chrysler Minivan; Therese Palermino, owner of a 2000 Ford Explorer; and James Segars, owner of a 2000 Plymouth Neon. Docket No. 46.

be granted; without jurisdiction, the court has no power to rule on the validity of a claim.") (Internal citations omitted).

### A. Chrysler and Ford's Motion to Dismiss:

Chrysler's and Ford's argument is simple. They first contend that the Lloyds lacked standing to sue either company when they filed their initial complaint. This is so, Chrysler and Ford insist, because (i) the Lloyds did not own a Chrysler or Ford vehicle; and (ii) because their original conspiracy allegation failed to state a claim, it was, therefore, insufficient to keep either Defendant in the case. Accordingly, Chrysler and Ford contend that "[s]ince the Lloyds did not have standing to sue either [manufacturer] in their original complaint, they lacked standing to amend the complaint to add parties who

purportedly did have standing[.][A] plaintiff cannot amend a complaint that is a nullity." Docket No. 137, at 2.

Given the procedural posture of this case, the Court declines to re-examine the Lloyd's initial complaint. We have already determined, at Chrysler and Ford's insistence, that the fourth amended complaint "commenced" a new action under applicable Maryland law, enabling the Defendants to remove this case to federal court under the terms of the CAFA. Docket No. 126 at 7. ("The [FAC] ... must [ ] be treated as *new litigation* for purposes of the CAFA.") (Emphasis supplied). Accordingly, as far as this Court is concerned, the instant proceedings began with the filing of the fourth amended complaint, and it is to that complaint that the Court will look in determining the Plaintiffs' standing to sue.[5]

---

**5.** Assuming, *arguendo*, that the original complaint controls, our conclusion remains unchanged. In support of their argument that the Plaintiffs lack standing, Chrysler and Ford place great emphasis on *Summit Office Park v. United States Steel Corp.*, 639 F.2d 1278 (5th Cir.1981), in which the Fifth Circuit held that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Id.* at 1280. As became clear at oral argument, however, *Summit* is distinguishable from the instant case in at least one respect.

More than once in its opinion, the panel in *Summit* observed that the plaintiff in that case was precluded by an intervening Supreme Court decision from asserting *any* claim against the defendants. By way of background, the plaintiff in *Summit* was an indirect purchaser of reinforced steel bar ("rebar") that was seeking damages for alleged antitrust violations. After the action was filed, the Supreme Court issued its decision in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), barring indirect purchaser suits under the federal antitrust laws. As a result, "there was no way in which the plaintiff could properly amend

the complaint to give it a cause of action." *Summit,* 639 F.2d at 1282. Under those "special circumstances," the panel in *Summit* determined that the plaintiff lacked standing to amend its complaint. *Id.* (Continued on next page ...)

In this case, by contrast, the Lloyds alleged in their original complaint that Chrysler and Ford had conspired with the other Defendants to conceal their defective seating systems and mislead regulatory authorities. *See* Docket No. 2, ¶ 54 Although Chrysler and Ford object that these allegations fail to state an actionable conspiracy, the fact remains that the Lloyds remained able to, and later did, amend their complaint to sharpen its allegations. *See, e.g.,* Docket No. 12, ¶¶ 76–77, 125. As the Maryland Court of Appeals determined, and as this Court is inclined to agree, the Lloyds' third amended complaint alleged sufficient facts to adequately plead the elements of civil conspiracy. *Lloyd v. General Motors Corp.,* 397 Md. 108, 916 A.2d 257, 284–85. Even if the TAC falls short, moreover, it is readily apparent that this is not a case in which no amendment could give the Lloyds a cause of action. For this reason, at least one of the "special circumstances" supporting the holding in *Summit* is absent from the case before us. The Court is, therefore, persuaded that even if the original complaint controls,

■ In order to satisfy "the irreducible constitutional minimum of standing," the Plaintiffs must allege that they have suffered an injury in fact which is fairly traceable to the Defendants' conduct and likely to be redressed by a favorable decision. *See, e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Each of these requirements is satisfied by the fourth amended complaint. First, the Maryland Court of Appeals has already determined that the plaintiffs have alleged a cognizable injury, i.e., the "cost to class members to fix the [allegedly] defective seatbacks, a proven cause of serious injury or death in rear-end accidents." *Lloyd,* 916 A.2d at 266. Second, eight of the 12 named plaintiffs in this case own Chrysler or Ford vehicles, and the injuries they allege are readily traceable to the Defendants who manufactured their cars. Finally, a judgment in the Plaintiffs' favor will result in money damages, which will adequately redress the cost of replacing the allegedly defective seating systems. For these reasons, it is clear from the fourth amended complaint that the plaintiffs have standing to sue Chrysler and Ford. Accordingly, the Court will deny Chrysler and Ford's separate motion to dismiss.

## B. *The Joint Motion to Dismiss:*

The Defendants raise several arguments in support of their joint motion to dismiss, at least two of which the Plaintiffs conceded in their papers but later re-contested at oral argument. To simplify the discussion that follows, the Court will begin its analysis with these two claims.

First, the Defendants contend that named plaintiffs Katherine Wilson, Mary Devine, Frances Pastan, Anita Pastan, James Segars and Stephanie Dugan fail to state a claim because each owns a vehicle not within the FAC's definition of "class vehicle." Docket No. 67, at 20. Citing "an oversight in drafting," the Plaintiffs initially acknowledged that the Defendants were correct, Docket No. 67, at 20, but later changed their position. Relying on a footnote in the fourth amended complaint, the plaintiffs now contend that they have reserved the right to expand the category of class vehicles as they obtain information during discovery.[6] Assuming, *arguendo,* that this proposition is correct, the fact remains that the above-named plaintiffs are not currently members of the class they seek to represent. As a result, the Court is constrained to dismiss their claims without prejudice, subject to refiling if the class is later amended.

The Defendants further assert that the Lloyds should be dismissed because their claims against Saturn are moot and their claims against Chrysler are time-barred. Docket No. 67, at 14, 18. Rather than dispute this argument in their brief, the Plaintiffs represented that the Lloyds would voluntarily dismiss themselves from the case. Docket No. 136, at 3. At oral argument, however, counsel once again reversed course, arguing that the Lloyds

*Summit* is inapposite and the Lloyds had standing to amend their complaint.

6. The footnote provides: "In conformance [sic] with the Maryland Court of Appeals' rationale in *Lloyd v. General Motors,* [916 A.2d 257 (Md.2007)], Plaintiffs refine the definition of Class Vehicle to include, preliminarily, those vehicles that appear to pose the most severe and most probable risk of serious injury to occupants and persons in the zone of danger created by collapsing seats [ ] that upon information and belief are substantially similar if not identical in design and manufacture. Plaintiffs do not yet have the benefit of Defendants' complete design and crash test data. As such data is obtained via discovery[,] Plaintiffs expect to add more Class Vehicle makes and models to this section via amendment." Docket No. 46, at 9, n. 1.

should remain in the case because they continue to own a class vehicle, i.e., a 1997 Dodge Minivan. Thus, although it remains undisputed that the Lloyds' claims against Saturn are moot, the Court must now ascertain whether their claims against Chrysler are time-barred. The Court will address the Lloyds' claims with those of the remaining plaintiffs below.

In addition to the Lloyds' claims against Chrysler, the Court is left with the claims of six named plaintiffs: Taylor Ruhl, owner of a 1995 Saturn; Gregory Ferguson, owner of a 1999 Saturn; Thomas Dillingham, owner of a 1998 Ford Explorer; Scott Orbach, owner of a 1999 Chrysler Minivan; Joan Canterbury, owner of a 1999 Chevrolet Silverado; and Therese Palermino, owner of a 2000 Ford Explorer. Although each of the remaining plaintiffs asserts a variety of claims in the fourth amended complaint, for present purposes their claims can be divided into two categories: tort-based claims and implied warranty claims.

### 1. Tort–Based Claims

We begin with the Plaintiffs' tort-based claims. The Defendants assert that the vast majority of these claims—specifically, those of all remaining Plaintiffs except for Gregory Ferguson—are untimely and must be dismissed. On the state of the record before us, however, any determination as to whether the claims are time-barred presents a question of fact for the jury.

Under Maryland law, the Plaintiffs' tort-based claims are subject to a three-year statute of limitations. *See* Md.Code Ann., Courts & Judicial Proc., § 5–101. ("A civil action at law shall be filed within three years from the date it accrues[.]") Significantly, however, the date on which a claim accrues is determined by the application of the discovery rule, which tolls the limitations period "until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of reasonable diligence." *MacBride v. Pishvaian,* 402 Md. 572, 937 A.2d 233 (2007) (internal citations omitted). As the Maryland Court of Appeals has explained, "this latter alternative" assumes that the plaintiff had knowledge of circumstances which would have caused a reasonable person to conduct an investigation that would have led to knowledge of the alleged tort. *O'Hara v. Kovens,* 305 Md. 280, 503 A.2d 1313, 1316 (1986); *citing Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677, 680 (1981). Whether a plaintiff was placed on inquiry notice is typically a question of fact for the jury. *See, e.g., Baysinger v. Schmid Prods. Co.,* 307 Md. 361, 514 A.2d 1 (1986); *Kovens,* 503 A.2d at 1320. *But see Doe v. American Nat'l Red Cross,* 923 F.Supp. 753 (D.Md.1996) (deciding the inquiry notice question as a matter of law).

In this case, the Defendants assert that the Plaintiffs cannot "hide behind the discovery rule" given the allegations of their fourth amended complaint. Docket No. 138, 11. In support of this argument, the Defendants emphasize that the complaint contains multiple references to the "wealth of public information regarding the alleged defect," such as "widely recognized" studies, public petitions to regulatory authorities, and a 1992 broadcast of the television show "60 Minutes." *Id.* According to the Defendants, each and every named plaintiff is charged with knowledge of this information as of the time they purchased their car. Accordingly, the Defendants contend that the Plaintiffs' tort-based claims accrued no later than "the day they acquired their respective class vehicles." *Id.*

What the named plaintiffs knew and when they knew it, however, is a fact-

intensive question that cannot be determined from the face of the amended complaint. Despite the Defendants' assertions, the mere fact that information was "publicly available," even if featured on an episode on "60 Minutes," does not compel the conclusion that each individual plaintiff should have been aware of the it at the time they purchased their vehicle. Although such a conclusion is plausible, the Court is persuaded that this is a question for discovery. Thus, at this point in the proceedings, we are unable to conclude that the Plaintiffs' claims are time-barred.[7]

### 2. *Implied Warranty Claims*

Repeating their objection to the Plaintiffs' tort-based claims, the Defendants contend that all of the Plaintiffs' implied warranty claims, except for those of Gregory Ferguson, are barred by the statute of limitations. Because the discovery rule is inapplicable in this context, the Defendants' assertions are (mostly) correct.

Pursuant to Section 2–725 of the Maryland Commercial Code, claims arising from a breach of implied warranty are subject to a four-year statute of limitations. Md. Code Ann., Comm. Law § 2–725. Unlike tort-based claims, however, breach of implied warranty claims are not governed by the "discovery rule," meaning that a cause of action accrues on the date the breach occurs, regardless of the aggrieved party's lack of knowledge of the alleged breach. *Id.* Section 2–725(4) makes clear, however,

that the statute "does not [otherwise] alter the law on the tolling of the statute of limitations." *Id.*

■ Of the seven remaining plaintiffs, only the Lloyds were listed as named plaintiffs in the third amended complaint. At the time, however, their claims arose entirely from their ownership of a 1995 Saturn, which they later sold before acquiring a 1997 Dodge Minivan. Thus, because the TAC did not include a claim by the Lloyds against Chrysler, the limitations period was not tolled with respect to that claim while the Lloyds appealed the dismissal of the third amended complaint. Accordingly, the Lloyds' implied warranty claim against Chrysler is time-barred if their minivan was put into service more than four years before the filing of the fourth amended complaint, i.e., before August 20, 2003.

Under these circumstances, the Court concludes as a matter of law that a model year 1997 vehicle would have been put into service[8] sometime before August 2003. As a result, the Lloyds' implied warranty claims against Chrysler, which were first raised on August 20, 2007, are untimely and must be dismissed.

■ Although not listed as named plaintiffs, Thomas Dillingham and Scott Orbach were members of the putative class in the third amended complaint. Thus, pursuant to the rule announced in *American Pipe & Constr. Co. v. Utah,* 414

---

**7.** We note at this point that the Defendants have requested a more definite statement concerning the plaintiffs' acquisition of their vehicles. Because of the open question on the issue of inquiry notice, however, the Defendants will not be prejudiced, at least as far as their tort claims are concerned, by waiting until discovery to obtain this information. *See Hodgson v. Virginia Baptist Hospital, Inc.,* 482 F.2d 821 (4th Cir.1973) ("Prompt resort to discovery provides adequate means for as-

certaining the facts without delay in maturing the case for trial[.]")

**8.** Pursuant to Section 2–725(2) of the Maryland Commercial Code, "[a] breach of warranty occurs when tender of delivery is made." Thus, in the case of a passenger vehicle, a cause of action accrues when the vehicle is first put into service, not when the vehicle is first acquired by the plaintiff if the plaintiff is not the original buyer.

U.S. 538, 555, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the statute of limitations applicable to their implied warranty claims was temporarily tolled after the filing of the TAC. This tolling period ended, however, on March 15, 2000, the date on which the trial court dismissed the TAC. *See, e.g., Culver v. City of Milwaukee,* 277 F.3d 908, 914 (7th Cir.2002) ("The filing of a class action suit tolls the statute of limitations for all members of the class, but when the suit is dismissed without prejudice or class certification is denied the statute resumes running for the class members.") (internal citations and quotations omitted.) As a result, Dillingham and Orbach's breach of implied warranty claims, which were first asserted in August 2007, were well outside the four-year statute of limitations. Accordingly, the Defendants correctly assert that their claims must be dismissed.

The analysis is simpler with respect to Canterbury and Palermino, who were neither named plaintiffs nor members of the putative class in the third amended complaint. As a result, their claims were not subject to the *American Pipe* tolling rule. Because both Canterbury and Palermino own model year 2000 vehicles (a Ford Explorer and Plymouth Neon, respectively), the Court is satisfied as a matter of law that their cars were put into service before August 2003. Thus, Canterbury and Palermino's implied warranty claims are more than four years old, and accordingly barred by the statute of limitations.

This leaves the implied warranty claims of Taylor Ruhl and Gregory Ferguson, owners of a 1995 and a 1999 Saturn, respectively. Ruhl was a member of the original putative class, and Ferguson joined the litigation in November 1999 as a named plaintiff in the second amended complaint. Because Ferguson owns a model year 1999 vehicle, it is clear from the record that his claim was timely filed.

With respect to Ruhl, on the other hand, it is possible that he acquired his vehicle before June 15, 1995, which is more than four years prior to the filing of the original complaint. On the state of the record before us, however, the Court is unable to make this determination, as the Plaintiffs have failed to plead the date on which Ruhl acquired his vehicle. As the Court shall explain in a moment, however, the Plaintiffs' lack of specificity on this point does not affect the ultimate disposition of Ruhl's claim.

Assuming for the moment that Ruhl's claim is timely, the Defendants have challenged both his claim and Ferguson's on another alternative ground. According to the Defendants, the Plaintiffs' implied warranty claims are barred because they failed to notify their immediate sellers of the alleged breach of warranty, as required by Section 2–607 of the Maryland Commercial Code. Md.Code Ann. § 2–607(3)(a); *see also Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 327 A.2d 502 (1974). As the following discussion makes clear, the Defendants' position is correct.

The Maryland courts have yet to determine whether a manufacturer, such as the Defendants in this case, may raise as an affirmative defense a consumer's failure to notify his immediate seller of an alleged breach of warranty. In *Firestone Tire and Rubber Co. v. Cannon,* the Maryland Court of Special Appeals flagged this question but specifically declined to answer it. 53 Md.App. 106, 452 A.2d 192, 196, n. 6 (1982) ("[A]s such notice was given here, we need not (and do not) address the issue."). In the body of its opinion, however, the *Cannon* court explained that "when the consumer's notice of breach is given to his immediate seller, such person to preserve any right of action he may have for breach of implied warranty will give notice to his immediate seller, and so on up-

stream until the seminal point in the distributive chain is reached." *Id.; quoting Goldstein v. G.D. Searle & Co.,* 62 Ill. App.3d 344, 19 Ill.Dec. 208, 378 N.E.2d 1083, 1087 (1978). Thus, a manufacturer has a distinct interest in whether an aggrieved consumer notifies his immediate seller of a breach. It is only logical, therefore, that a consumer's failure to observe this requirement should provide the manufacturer with an affirmative defense.

In this case, the Plaintiffs have failed to plead that they notified their immediate sellers—presumably, the dealers who sold them their cars-of any alleged defect in the various Defendants' seating systems. Notwithstanding this oversight, the Plaintiffs assert that the notice requirement was satisfied in this case because the Defendants have been required to defend against similar class actions in other jurisdictions. Pl.'s Mem., Docket No. 135, at 20–22. ("Under the circumstances, the Defendants have long been in receipt of actual, timely notice that their cars are not merchantable under the standard implied warranty.") This kind of "notice," however, is not what the law requires.[9] As Judge Learned Hand explained in a pre-UCC case, "[t]he notice of the breach required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *the buyer's* claim that they constitute a breach." *American Mfg. Co. v. United States Shipping Board E.F. Corp.,* 7 F.2d 565, 566 (2nd Cir.1925) (emphasis supplied); *accord K & M Joint Venture Co. v. Smith Intern., Inc.,* 669 F.2d 1106 (6th Cir.1982). As the record in this case attests, the Plaintiffs have failed to provide anything approaching such notice to the immediate sellers of

their vehicles. For this reason, their implied warranty claims are barred as a matter of Maryland law.

To sum up, the Defendants have established that named plaintiffs Katherine Wilson, Mary Devine, Frances Pastan, Anita Pastan, James Segars, and Stephanie Dugan fail to state a claim and should be dismissed from the case forthwith. Furthermore, the Court agrees with the Defendants that the remaining named plaintiffs are barred from seeking damages for a breach of implied warranty. With respect to these claims, the Court will therefore grant the Defendants' joint motion to dismiss.

With respect to the remaining tort-based claims, however, at this point in the proceedings the Court is unable to determine whether the Plaintiffs' claims are time-barred. As a result, the following Plaintiffs' tort claims shall survive the motion to dismiss and accordingly proceed to discovery: (i) Timothy and Bernadette Lloyd; (ii) Taylor Ruhl; (iii) Gregory Ferguson; (iv) Thomas Dillingham; (iv) Scott Orbach; (vi) Joan Canterbury; and (vii) Therese Palermino.

## IV. Conclusion

For the foregoing reasons, the Court will (i) DENY Chrysler and Ford's separate motion to dismiss, and (ii) GRANT in PART and DENY in PART the Defendants' joint motion to dismiss. A separate order follows.

It is so ORDERED.

### *ORDER*

For the reasons stated in the memorandum of even date, the Court hereby:

---

9. The Court also rejects the notion advanced in the Plaintiffs' brief that the "mere filing of complaint" provided adequate notice. Docket No. 135, 22. *See Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 327 A.2d 502, 514 (1974) ("[T]he institution of an action by a buyer to recover damages cannot by itself be regarded as a notice of the breach contemplated under either [§ ] 2–607(3) or [§ ] 2–608(2).")

(i) GRANTS in PART and DENIES in PART General Motors' Motion to Dismiss (Docket No. 66);

(ii) GRANTS in PART and DENIES in PART Ford Motor Company's Motion to Dismiss (Docket No. 67);

(iii) GRANTS in PART and DENIES in PART Chrysler LLC's Motion to Dismiss (Docket No. 68); and

(iv) DIRECTS the Defendants to file an answer on or before October 1st, 2008.

It is so ORDERED.